Argued and submitted June 9, 2020; convictions on Counts 1 and 4 reversed and remanded, remanded for resentencing, otherwise affirmed May 19, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JONATHAN LOUIS BUSCH,
*Defendant-Appellant.*

Marion County Circuit Court
18CR31395; A169334

489 P3d 1084

Defendant appeals from a judgment of conviction for first-degree sodomy, ORS 163.405, fourth-degree assault constituting domestic violence, ORS 163.160(2), menacing constituting domestic violence, ORS 163.190, and felon in possession of a firearm (FIP), ORS 166.270(1). Defendant assigns error to the trial court's asserted restriction of his ability to cross-examine the victim, the admission of the victim's prior statements under the hearsay exception in OEC 803(26), and the use of a nonunanimous jury instruction. *Held*: The trial court did not impermissibly limit defendant's ability to cross examine the victim and did not error in admitting the victim's statements under OEC 803(26). Because the record reflects that the guilty verdicts for defendant's fourth-degree assault and menacing convictions were nonunanimous, those convictions must be reversed and remanded.

Convictions on Counts 1 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.

Claudia M. Burton, Judge.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Convictions on Counts 1 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.

**DeVORE, P. J.,**

Defendant appeals from a judgment convicting him of attempted first-degree sodomy, ORS 163.405, fourth-degree assault constituting domestic violence, ORS 163.160(2), menacing constituting domestic violence, ORS 163.190, and felon in possession of a firearm (FIP), ORS 166.270(1). On appeal, defendant first assigns error to the trial court's asserted restriction of his ability to cross-examine the victim using impeachment evidence. Second, defendant assigns error to the trial court's admission of the victim's prior statements under the domestic violence hearsay exception, OEC 803(26), arguing that the statements were not sufficiently reliable. Third, he assigns error to the trial court's use of a nonunanimous jury instruction. In his fourth and fifth assignments of error, defendant challenges the length of his sentence.

As to defendant's first assignment, we determine upon review of the record that the trial court did not restrict cross-examination to the extent alleged by defendant. Second, we determine that, because the record reflects sufficient indicia of reliability, the trial court did not err in admitting the victim's hearsay statements under the domestic violence hearsay exception. Third, we reverse and remand defendant's convictions for attempted first-degree sodomy and FIP, as the record reflects those guilty verdicts were nonunanimous. *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020). We decline, however, to review as plain error defendant's challenge to the nonunanimous jury instruction as to his convictions for fourth-degree assault and menacing because those guilty verdicts were unanimous. *State v. Chorney-Phillips*, 367 Or 355, 478 P3d 504 (2020). We do not reach defendant's fourth and fifth assignments of error regarding his sentence because we are reversing and remanding his convictions for attempted first-degree sodomy and FIP. In short, we reverse and remand defendant's convictions for attempted first-degree sodomy and FIP, remand for resentencing on the remaining counts, and otherwise affirm.

Defendant's convictions resulted from a domestic dispute between defendant and the victim, F. F and defendant

have a child together, but they had recently ended a 16-month relationship. On May 3, 2018, F filed a petition for a restraining order against defendant.

F testified that late in the day on May 8, 2018, she arrived at defendant's apartment to return her set of keys to the apartment. Although F said that she "didn't think it was a good idea" to go to defendant's apartment, she spent the night there and the two had consensual sex.

F testified that, on May 9, they woke up just before 8:00 a.m. and started to have consensual sex a second time but stopped when they started arguing. F said that, as she sat on the bed and started to get dressed, defendant stood in front of her, grabbed her neck, and pulled her face toward his penis. F slapped defendant to get away. She testified that defendant then grabbed a helmet case. F testified that, due to a recent shooting trip, she knew that defendant kept his gun and ammunition in the helmet case. F said that defendant acted like he was going to unzip the case "to the point where [she] was scared," but that defendant said "no" when she asked if he was going to shoot her.

F testified that defendant then came back to where F was sitting at the foot of the bed and pulled off her underwear with enough force to scrape her leg and rip the underwear in the process. When F put on another pair of underwear, F testified that defendant pulled off the second pair in the same manner.

Shortly after 8:00 a.m., F called 9-1-1 and told the operator that defendant had "tried to pull a gun out." F testified that defendant was "frantic" and that he had thrown her belongings and duffel bag around the apartment. F said that defendant then dragged her out of the apartment by her belt loops, locked the door, and left her outside. F told the 9-1-1 operator that defendant had left the apartment because he heard F calling the police.

Responding Officer Hodges arrived, and he saw that F had circular dime-sized bruises on either side of her neck, consistent with someone using force to push her head down. Hodges also observed a horizontal laceration on F's

right calf, which F told him resulted from defendant ripping her underwear off.

About two hours after the 9-1-1 call, Hodges interviewed defendant. Defendant confirmed that F had visited his apartment on the night of May 8 to return his apartment keys and ended up staying overnight. Defendant, however, told Hodges that he was the one who declined sex on the morning of May 9. Defendant said that F "started freaking out" about finding her keys, and he asked her to leave. According to defendant, when F would not leave, he grabbed her belongings and threw them toward the door. Defendant told Officer Hodges that he decided to leave the apartment and dragged F outside the door by her belt loops when she got in his way. Defendant denied threatening to kill F.

Later that day, Hodges searched defendant's apartment and discovered the apartment was in "disarray." Hodges found two pairs of ripped underwear, as described by F. He found F's belongings scattered around the apartment. F's purse was behind the headboard of the bed, turned upside down and with its contents spilling out, and her duffel bag was closer to the entryway. Hodges testified that F's belongings were scattered all over the room, not in "place[s] where a person would deliberately" set them.

Defendant was charged by indictment with one count of attempted first-degree sodomy, two counts of fourth-degree assault constituting domestic violence, one count of menacing constituting domestic violence, and one count of FIP.

Prior to trial, defendant sought to admit evidence of two petitions for a restraining order that F had filed against defendant. F filed the first petition on May 3, 2018, prior to the charged incident, and the second on May 20, 2018, after the charged incident. Specifically, defendant argued in support of their admission that some inconsistent statements in the petitions demonstrated that F's motive in this case was to keep defendant out of their child's life. The trial court denied admission of the restraining order petitions as not providing impeachment for the stated purpose. At trial, defendant testified and asserted his version of the facts; he argued that F's testimony was not credible.

The jury found defendant not guilty of one count of fourth-degree assault but guilty of all other charges.

On appeal, defendant first asserts that the trial court erroneously curtailed his ability to cross-examine F by excluding impeachment evidence. Defendant argues that the trial court "erred by not allowing defendant an opportunity to present to the jury the possibility that [F]'s testimony was tarnished by her desire to get defendant completely out of her life, as evidenced by the restraining orders." In relevant part, the state responds that defendant's argument is not preserved and that the trial court's ruling was not the broad restriction of impeachment evidence that defendant claims on appeal.

On review of the record, we agree with the state that the trial court did not make the ruling that defendant purports to challenge on appeal. To explain, we begin with defendant's argument in the trial court. Defendant argued below that particular inconsistencies within the two petitions filed by F were admissible impeachment evidence. Defendant argued that the differences in the two petitions demonstrated F's motive to "get [defendant] totally out of the life of the child" because "there's no children listed at all at any issue in the [second] [p]etition" and "[s]he's just continually changing" her story regarding the child's paternity.

When examining the contents of the May 3 and May 20 petitions, the trial court described the differences between the two as follows:

> "In the first [p]etition, on unmarried parents, number 16, she checks the box that says legal paternity of the children has not been established. In the second [p]etition, she just doesn't check any of the boxes under paragraph 16, unmarried parents.

> "And then in the first [p]etition, in paragraph 17, which addresses prior cases, sub B, she says that she's been involved in prior cases concerning custody or parenting time of, quote, 'the children.' And she refers to her Polk County cases in DHS there. In paragraph 17 of the second [p]etition, she does not refer to there being any other cases."

After that explanation of the two petitions, defendant declined to argue anything further. The trial court observed

that "[t]he only difference is that in one [p]etition she refers to the fact that there are DHS proceedings. And in the other [p]etition she doesn't." Both petitions did not list any joint children, say anything regarding who the child's father was, or make any requests for custody. The trial court added that, despite legal paternity not being established, it was undisputed as between the parties that defendant was the father of the child.

The trial court determined that the differences or omissions between the two petitions did not amount to material inconsistencies. F did not seek in either petition any custody order regarding a child. The trial court determined that the differences between the petitions did not support defendant's inconsistency-impeachment theory. The trial court described the question surrounding the admissibility of the petitions as follows:

> "But obviously, should [F] testify with regard to the charged incidents in some manner that's inconsistent with *** how she describes those incidents in these [p]etitions, then certainly, I think those are fair game to impeach her trial testimony with regard to the charged incidents. Other than that, I do not see *** the references *** to children. I don't think they're impeachment at all. And if they are, they're certainly impeachment on a collateral matter."

The court recognized that the petitions *could* be used if F testified and did so inconsistently with something in the petitions, but the court determined that the only "inconsistencies" were whether F mentioned "children" and whether F noted DHS proceedings. As such, the court concluded that the petitions did not really serve to impeach.

As we understand this record, the trial court's ruling was narrowly limited to disallowing use of the petitions for the purpose of arguing that the identified *differences* in the petitions could somehow show that F had a motive to exclude defendant from their child's life. The narrow scope of that ruling did not prohibit introduction of the petitions for all purposes, but only limited evidence of the petitions if offered as impeachment based on inconsistency between the forms. Defendant evidently understood the narrowness of the ruling: During cross-examination of F at trial, defendant

freely asked F to confirm that she had filed a petition for a restraining order on May 3.

Defendant's assertion on appeal is not based on an accurate portrayal of the record when he challenges the trial court's purported decision to "prohibit any evidence before the jury that in early May 2018 [F] attempted to get a restraining order against defendant." Defendant does not challenge the trial court's narrow ruling that the petitions' seeming inconsistencies were not a basis for impeachment. And, there is no ruling for this court to consider of the broader nature that he asserts. Therefore, we reject defendant's first assignment of error.

In his second assignment of error, defendant challenges the admission of F's statements to Officer Hodges as insufficiently reliable under the domestic violence hearsay exception, OEC 803(26). Defendant argues that because the state did not present sufficient evidence of the reliability of F's statements and the trial court made no explicit finding of reliability, the statements were inadmissible. The state responds that there is sufficient evidence of the statements' reliability in the record and that the trial court implicitly agreed that the statements were reliable when it admitted the statements under OEC 803(26). The state has the better argument.

When reviewing the trial court's ultimate determination that evidence is admissible under an exception to the hearsay rule, we review for errors of law. *State v. Ragibov*, 272 Or App 22, 25, 353 P3d 1247 (2015). We will uphold the trial court's relevant preliminary factual determinations if any evidence in the record supports them. *Id.*

The domestic violence hearsay exception in OEC 803(26) provides that a victim's report of domestic violence is admissible if it is made "within 24 hours after the incident occurred" and it was (1) "made to a peace officer as defined in ORS 161.015" and (2) exhibits "sufficient indicia of reliability." OEC 803(26); *Niehus v. Belleque*, 238 Or App 619, 624, 243 P3d 808 (2010), *rev den*, 349 Or 602 (2011). In determining whether a statement has sufficient indicia of reliability, OEC 803(26)(b) instructs the trial court to

"consider all circumstances surrounding the statement. The court may consider, but is not limited to, the following factors in determining whether a statement has sufficient indicia of reliability:

"(A)   The personal knowledge of the declarant.

"(B)   Whether the statement is corroborated by evidence other than statements that are subject to admission only pursuant to this subsection.

"(C)   The timing of the statement.

"(D)   Whether the statement was elicited by leading questions.

"(E)   Subsequent statements made by the declarant. Recantation by a declarant is not sufficient reason for denying admission of a statement under this subsection in the absence of other factors indicating unreliability."

The factors used to determine a statement's reliability listed in OEC 803(26)(b) are not exhaustive. *State v. Wilcox*, 180 Or App 557, 562, 43 P3d 1182, *rev den*, 334 Or 632 (2002). If a party alleges that the trial court made an error in admitting evidence under the domestic violence hearsay exception, there was no error if the record discloses sufficient grounds to conclude that the statements are reliable. *Id*.

For the following reasons, the totality of the relevant circumstances surrounding F's statements to Hodges supply adequate grounds to support the statements' reliability.

First, F's statements to Hodges detailed her personal knowledge of the events that took place on May 8 and May 9. *See* OEC 803(26)(b)(A). Second, F's description of events was independently corroborated by physical evidence. *See* OEC 803(26)(b)(B). Consistent with F's statements, two pairs of ripped underwear were discovered in the apartment, F's belongings were strewn haphazardly around the apartment, and F had bruising and lacerations consistent with her description of defendant's behavior. Third, F relayed her statements to Hodges within 15 minutes of the incident. *See* OEC 803(26)(b)(C). Fourth, there is no indication that Hodges used leading questions to elicit F's version of events. *See* OEC 803(26)(b)(D). Here, the evidence in the record demonstrates evidence to satisfy reliability factors

contained in OEC 803(26)(b). F's statements were admissible under OEC 803(26).

In sum, the trial court did not impermissibly limit defendant's ability to cross-examine the victim and did not error in admitting the victim's statements under the domestic violence hearsay exception. We reverse and remand defendant's convictions for attempted first-degree sodomy and FIP, remand for resentencing on the other counts, and otherwise affirm.

Convictions on Counts 1 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.