No. 28          May 5, 2016          351

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

SUNIE SHAWN WATERHOUSE,
*Petitioner on Review.*

(CC D121196M; CA A153037; SC S062799)

On review from the Court of Appeals.*

Argued and submitted September 10, 2015.

Sarah Laidlaw, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Susan Yorke, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer Justices.**

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

––––––––––––––
    * Appeal from Washington County Circuit Court, Gayle A. Nachtigal, Judge. 266 Or App 346, 337 P3d 195 (2014)

    ** Nakamoto, J., did not participate in the consideration or decision of this case.

## BALDWIN, J.

Defendant took a pickup truckload of scrap metal items from the metal recycling bin of a Washington County microchip manufacturing plant and was subsequently charged with third-degree theft, a criminal charge applicable when the value of the item or items stolen is less than $100. *See* ORS 164.043 (so stating). At the close of the state's case-in-chief, defendant unsuccessfully moved for a judgment of acquittal, arguing that the evidence presented by the state had failed to establish that the items he had taken possessed actual—as opposed to speculative—value. Defendant was subsequently convicted of the theft charge against him. The Court of Appeals affirmed that conviction, holding that the evidence adduced at trial had been sufficient to permit a reasonable juror to find that the items stolen by defendant had indeed possessed some market value. *State v. Waterhouse*, 266 Or App 346, 337 P 3d 195 (2014). For the reasons set out below, we affirm the Court of Appeals decision.

In reviewing denial of a motion for a judgment of acquittal, this court sets out the pertinent facts and all reasonable inferences that may be drawn from those facts in the light most favorable to the state. *State v. Walker*, 356 Or 4, 6, 333 P 3d 316 (2014). The relevant facts are undisputed. At approximately 3:00 a.m. one morning in March 2012, a security guard at microchip manufacturer Maxim Integrated Products (Maxim) observed defendant and a second man drive their pickup truck into the fenced service area of the company's Hillsboro campus and park next to a large dumpster-like recycling container filled with scrap metal. Using closed circuit cameras, the security guard watched as the two men spent the next 15 to 20 minutes loading large scrap metal items from the company's recycling container into the back of their pickup truck. Among the items taken from the container were metal chairs, a large shelving unit, miscellaneous metal pieces, and long sections of gutter material. One of the police officers subsequently involved in defendant's arrest would later describe the volume of metal being hauled away as a "full" truck bed of large metal objects.

As defendant and his partner loaded their truck, the company security guard reported their actions to local law enforcement authorities. Consequently, three Hillsboro Police Department patrol units were waiting for the pair as they attempted to exit the property with the truckload of metal. Both men were arrested and booked into the Washington County Jail.

Defendant was subsequently charged with third degree theft under ORS 164.043. The criminal complaint stated, in pertinent part, that

"[t]he defendant, on or about March 17, 2012, in Washington County, Oregon, did unlawfully commit theft of scrap metal *of some value* and the property of Maxim Integrated Products."

(Emphasis added.) ORS 164.043(1) provides:

"(1)   A person commits the crime of theft in the third degree if:

"(a)   By means other than extortion, the person commits theft as defined in ORS 164.015; and

"(b)   The total value of the property in a single or an aggregate transaction is less than $100."

By its plain terms, ORS 164.043 required the state to prove several different elements in order to convict defendant of the charge against him. First, the state was required to show that defendant had committed statutory theft under ORS 164.015; *i.e.*, had intentionally taken, appropriated, obtained, or withheld property owned by another for the purpose of depriving someone of that property or appropriating it to defendant's own use. *See* ORS 164.015(1) (so stating). Second, the state was required to establish that the property taken had some monetary value, specifically, more than zero, but less than $100. *See* ORS 164.043(1)(b) (providing that theft of property valued at less than $100 chargeable as third degree theft). Valuing the items stolen was governed by ORS 164.115 which—then as now—defined the term "value" as used in the theft statutes as either (1) market value, (2) replacement value, or (3) a presumed value of less than $50 in the event actual value could not be reasonably ascertained:

"[T]he value of property shall be ascertained as follows:

"(1)   Except as otherwise specified in this section, value means the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime.

"* * * * *

"(5)   When the value of property cannot reasonably be ascertained, it shall be presumed to be an amount less than $50 in a case of theft * * *."

At trial, the Maxim security guard who had first observed defendant and his partner taking items from the company's scrap metal container testified that Maxim regularly contracted with a recycling company to haul away the container once it was full. According to the security guard's testimony, the recycling company paid Maxim for the metal collected from the container in amounts that varied depending on the weight and type of metal contained in each load. The security guard, however, did not know the average price paid for a full container of scrap metal, nor did he testify as to how much the recycling company would have paid for the specific pieces that defendant took.  The state offered no other evidence as to the value of those items.

At the close of the state's case-in-chief, defendant moved for a judgment of acquittal, arguing that the state had failed to prove that the property taken had actual value:

"[T]he State has only presented evidence that there is a collection service that does collect metal. They have not been able to place—they have not been able to place any kind of monetary value on it, nor have they been able to indicate that the service in fact would pay for the goods requested."

"* * * * *

"And so in this situation, all we have is speculative testimony. The security officer for Maxim said that the property was metal, they have a service that collects metal property, but he indicated that they only collect full dumpsters full of property. He didn't indicate that they would be willing to drive and pick up and pay for, you know, this specific chair and bookcase, nor did he indicate that they would in fact have found that material was valuable at all."

The trial court denied defendant's motion, and a jury ultimately found defendant guilty of third-degree theft.

On appeal, defendant contended that the trial court had erred in denying his motion for a judgment of acquittal. In doing so, he reiterated his position that the state had failed to produce sufficient evidence from which a jury could find that the scrap metal items taken by defendant had any value at all. According to defendant, the evidence adduced at trial had demonstrated only that the recycling company *might* have paid Maxim the scrap value of those items, not that such a transaction was a foregone conclusion. The upshot of that, defendant continued, was that the state had presented the jury with evidence relating to value that was only speculative.

A unanimous Court of Appeals panel disagreed. Noting first that, under ORS 164.115(1), it was possible to establish that a stolen item had *some* monetary value by demonstrating its market value at the time and place of the crime, the Court of Appeals opined that

> "[i]t follows that evidence showing that a stolen item has *some* market value—*i.e.*, not *no* market value—is sufficient to prove that the item has the requisite value to support a conviction for theft in the third degree, whether or not the *specific* market value of the item is proved."

*Waterhouse*, 266 Or App at 350 (emphasis in original). That "some value" standard, the Court of Appeals continued, had been met by evidence demonstrating the existence of a willing buyer and willing seller for the stolen items, the only elements under Court of Appeals case law needed to establish an actual market in which the stolen items would have value in trade. *Id*. The court reasoned that there was ample evidence in the record establishing that market value:

> "The employee's testimony at trial established that the victim had an active and ongoing contract to sell the contents of the drop box to a buyer, the recycling company. The employee testified that the buyer paid the victim for metal materials left in the drop box and that the stolen items, which were taken by defendant from the drop box, were all made of metal. Thus, defendant is incorrect: the evidence in this case demonstrates that the recycling company *would*

have paid for the stolen items, not merely that they *may* have. Furthermore, according to the employee, the amount paid for such items depends on the weight of the item and the type of metal from which it is made. This further indicates that *some* amount is always paid for metal items from the drop box, even if the precise amount may vary. As discussed above, given those facts, it is irrelevant that the employee could not specify the precise amount that the buyer would have paid the victim for the stolen items."

*Id*. at 351 (emphasis in original).

The Court of Appeals concluded that, viewed in the light most favorable to the state, the evidence adduced at trial was sufficient to allow a reasonable juror to find that there was a market for the items stolen by defendant, thereby imbuing those items with a sufficiently non-speculative market value for purposes of third-degree theft. As a result, the Court of Appeals concluded that the trial court had ruled correctly in denying defendant's motion for acquittal and affirmed defendant's judgment of conviction.

On review, defendant takes issue with the Court of Appeals' conclusion that proof of the precise value of the stolen items at issue here was not required to establish third-degree theft. Defendant begins by correctly noting that, under the Oregon Criminal Code, property is expressly defined as

> "any article, substance or thing of *value*, including, but not limited to, money, tangible and intangible personal property, real property, choses-in-action, evidence of debt or of contract."

ORS 164.005(5) (emphasis added). The term "value," defendant argues, specifically means "monetary value," a conclusion he reaches by reference to:

- *Webster's Third New Int'l Dictionary* 2530 (unabridged ed 2002) (defining "value," in part, as "the monetary worth of something").

- *State v. Whitley*, 295 Or 455, 458-59, 666 P2d 1340 (1983) (in which the court opined that it did not believe that "'symbolic value' or 'value in use'" was

intended by the legislature to serve as sufficient evidence of value).

- The various theft statutes set out in ORS 164.043 through ORS 164.057, all differentiated by degree—third-degree theft to first-degree aggravated theft—based on the monetary value of the items stolen.

Building on that foundation, defendant contends that the state's failure to produce evidence regarding the actual monetary value of the stolen items in this case means that it also failed to establish that those items were, in fact, "property" for purposes of the Oregon Criminal Code. First, according to defendant, evidence of value was missing because there was no proof that the recycling company would have actually paid anything for the stolen objects had they been picked up as part of a full load. Defendant's point appears to be that, absent some specific evidence of the items' individual scrap values, it is not unreasonable to infer that the recycling company might have deemed those particular items worthless and refused to pay for them when it came to collect the recycling bin. Second, defendant argues that there was a similar lack of value-related evidence based on the individual qualities of the items taken; *i.e.*, there was no evidence that the stolen items retained some value because they had once been used as chairs, a shelf unit, gutters, etc. And finally, defendant argues that, even if it were possible to infer that the stolen items would have, indeed, added some worth—however slight—to the overall value of a full recycle bin, there was no evidence that the stolen pieces had any value by themselves outside of that context. According to defendant, without any evidence of specific values, the items taken by defendant cannot be viewed as "property" for purposes of third degree theft and he cannot be convicted of that crime.

We agree with defendant that, under the Oregon Criminal Code, the concepts of "property" and "value" are inextricably linked in that the former does not appear to exist apart from some evidence of the latter, at least in matters involving offenses against property. Although that connection was codified at ORS 164.005(5) as part of the criminal code revision that took place in 1971, the notion that a

stolen item must have some value in order to be considered property is rooted even deeper in this court's case law. *See, e.g., State v. Albert*, 117 Or 179, 186, 242 P 1116 (1926) (noting that "stolen property must have value in order to be the subject of larceny"); *State v. Poyntz*, 168 Or 69, 71, 120 P2d 966 (1942) (holding that, for purposes of petty larceny, the term "property" "implies not only ownership, but also that the thing owned possesses some value, however small"). We disagree with defendant, however, as to the nature of the evidence needed to establish the value of property for purposes of third-degree theft.

Oregon's theft statutes are graduated in severity, beginning with third-degree theft under ORS 164.043, a class C misdemeanor, and progressing through second-degree theft under ORS 164.045, a class A misdemeanor, first-degree theft under ORS 164.055, a class C felony, up to first-degree aggravated theft under ORS 164.057, a class B felony. The primary factor differentiating those particular theft crimes is the statutory threshold value of the property stolen: For purposes of second-degree theft, the stolen item must be valued at a minimum of $100, for first-degree theft, a minimum of $1000, and for first-degree aggravated theft, a minimum of $10,000.

The statute delineating third-degree theft, in contrast, contains no threshold value requirement at all, only a ceiling—less than $100. Consequently, the minimum valuation needed to establish that a stolen item falls within third-degree theft and the minimum valuation needed to simply establish that an item is, in fact, "property," are identical; both require only that the item possess some value, the standard articulated in the state's charging complaint.

That similarity underscores an important feature of the various "offenses against property" contained in ORS chapter 164: within the chapter, the materiality of a stolen item's value as an element of an offense can differ significantly depending on the crime. The respective minimum values, for example, that help delineate first-degree, second-degree, and first-degree aggravated theft all clearly constitute a material element of the offense each is associated with; in order to prove those offenses, the state must

also prove that the value of the stolen item or items meets each applicable statutory minimum. But as the provisions for third-degree theft demonstrate, not all property-related crimes contain a specific value requirement. Some—like first-, second-, and third-degree robbery—are similar to third-degree theft in that the only value requirement articulated by the statutes defining those crimes is that the item stolen must constitute "property;" *i.e.*, possess some value.[1] Thus, for some crimes involving the unlawful taking of another's property, the exact worth of the item stolen is not material to the crime, so long as the stolen item possesses some value.

We have discussed that notion of materiality before. In *State v. Broom*, 135 Or 641, 646, 297 P 340 (1931) this court held that, with regard to the crime of "larceny from a person," the value of a stolen item could be established by inference alone. In *Broom*, the defendant and his wife had disarmed two Tillamook County sheriff's deputies late one night after drawing down on the pair using an inoperative handgun. Ordering the officers on their way after forcing them to abandon their weapons, the defendant took one of the deputies' captured handguns and held it for a week before returning it in person to the Tillamook County Sherriff's Office. His lawyer, who accompanied him, explained that the defendant had taken the handgun because he had mistaken the officers for "highwaymen."

The defendant was subsequently convicted of "[l]arceny by stealing from the person," Oregon Code, title XIV, ch III, § 14-317 (1930), an offense not unlike present-day third-degree robbery in that it, too, failed to prescribe a specific threshold value for the property stolen. On appeal,

---

[1] Under ORS 164.395, for example, a person commits third-degree robbery

"if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of *the property* or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such *property* or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

ORS 164.395(1) (emphasis added).

although this court was careful to acknowledge that stolen items must, indeed, have some value to be considered property under the criminal statutes, it was untroubled by the lack of direct evidence regarding the specific value of the property stolen. In upholding the defendant's conviction, the court noted, among other things, that

> "the definitions of 'larceny' always embrace ownership and value, and very often use the term as 'the property of' the victim; 'the property of' designating both ownership and a thing of some value.
>
> "In the case at bar, no witness testified directly as to the value of the pistol claimed to have been stolen from the person of Lucas. However, both courts and text-writers hold that *the value of the article forming the subject-matter of the larcenous act may be shown inferentially. In the crime of larceny from the person, 'the value of the property is immaterial, so that it have some value.* There is no occasion, as there is in larceny, for alleging the value, as the punishment is not made to depend on the value of the property taken.'"

*Broom*, 135 Or at 647 (internal citations omitted; emphasis added).

We find that idea—the notion that a stolen item's value can be established inferentially in cases where value is not a material element of the crime—to be instructive here. Contrary to the position taken by defendant, the state was not required to establish a specific value for the scrap metal stolen in this case in order to convict defendant of third degree theft.[2] In light of *Broom*, we conclude that all that

---

[2] Defendant's reliance on State v. *Whitley*, 295 Or 455, 666 P2d 1340 (1983) for the contrary proposition is unavailing. In *Whitley*, a demonstrator at the University of Oregon had disrupted a public meeting on campus by setting a gasoline-soaked rag on fire and flinging it in front of the speaker's podium, where it was quickly extinguished. The demonstrator was subsequently charged with arson, a crime that required the state to prove, in part, that the thing burned (the rag) was property. The state, however, failed to allege or present evidence that the rag possessed the requisite value needed to establish that fact. In reversing the defendant's arson conviction, this court wrote:

> "We do not know why Oregon's legislature required that the defendant intentionally damage 'property' by starting a fire before this crime can be completed, but in any event this is a deviation from the Model Penal Code. By injecting the necessity that the state prove that what was burned was 'property,' the state is bound by the definition of 'property' found in ORS

was required in this case was evidence from which the jury could reasonably infer that the stolen metal scrap possessed "some value," the minimum needed to define it as "property."

In coming to that conclusion, we recognize that *Broom* is superficially distinguishable insomuch as the crime at issue in that case was not predicated on a specific range of values, unlike third degree theft, where the value range falls essentially between some value greater than zero but less than $100. Here, however, that fact is simply a difference without a distinction. Given that both crimes are based on the same *de minimis* value threshold—some value greater than zero—in our view, the materiality of that valuation to both crimes is also the same, rendering both provable by inference.

The final issue we must consider is whether there was sufficient evidence from which the trier of fact could infer that the items of property stolen by defendant indeed possessed some value. *See Sate v. Walker*, 356 Or at 6, *State v. Rader*, 348 Or 81, 91, 228 P3d 552 (2010) (standard of review on a motion for judgment of acquittal is "whether there was sufficient evidence in the record from which a reasonable trier of fact could find the elements of the crime beyond a reasonable doubt \*\*\*"). Here, the state adduced evidence that: (1) Maxim routinely placed scrap metal items in a recycling container on their fenced-in property and did not place the items in a trash container; (2) Maxim had an ongoing contractual relationship with a recycling company that paid Maxim varying amounts for the contents of the container based on the weight and type of metal; and (3) defendant and his partner took scrap metal items from the container during the middle of the night, items that they presumably believed had some value. A trier of fact could

---

164.005(5). This means that as an element of proof the state must prove the property had 'value' as defined by this section. Because this section also defines 'property' for purposes of the various theft statutes, we do not believe that 'symbolic value' or 'value in use,' as argued by the state, was intended by the legislature as sufficient evidence of value."

*Id*. at 458-59 (footnote omitted).

Here, in contrast, the state alleged that the stolen property had some value and produced sufficient evidence at trial for the jury to conclude the same. As a result, *Whitley* is inapplicable here.

reasonably infer from that evidence that there was (1) a market for scrap metal based on weight and type; and (2) that the items selected by defendants had value in that market.[3]

Based on that evidence, a reasonable trier of fact could find beyond a reasonable doubt that the items of scrap metal taken by defendant had some market value. We agree with the Court of Appeals that, when viewed in the light most favorable to the state, the evidence was sufficient to allow a reasonable juror to find that there was a market for the items stolen by defendant, thus establishing that those items possessed a sufficiently non-speculative market value to properly render them "property" for purposes of third degree theft.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[3] Our analysis and decision in this case does not rely on the statutory presumption that "[w]hen the value of property cannot reasonably be ascertained, it shall be presumed to be an amount less than $50 in a case of theft[.]" ORS 164.115(5).