No. 233 March 19, 2025 87

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER STUTTE,
*Defendant-Appellant.*

Douglas County Circuit Court
23CR26379, 23CR16084;
A182017 (Control), A182018, A182023

Kathleen E. Johnson, Judge (Judgment entered May 26, 2023)

Robert B. Johnson, Judge (Judgments entered July 11, 2023 and July 14, 2023)

Submitted November 20, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

In Case No. 23CR26379, judgment of conviction for burglary reversed; remanded for entry of judgment of conviction for second-degree criminal trespass as a lesser included offense and for resentencing. In Case No. 23CR16084, vacated and remanded.

## AOYAGI, P. J.

In this consolidated criminal appeal, defendant challenges the denial of his motion for a judgment of acquittal (MJOA) on second-degree burglary (Count 1) in Case No. 23CR26379. He argues that the evidence was legally insufficient to establish that he intended to commit theft in the building. For the reasons explained below, we reverse the judgment of conviction for burglary and remand with instructions to enter a conviction for second-degree criminal trespass. As the parties agree, that disposition requires that we also vacate and remand the probation-revocation judgment in Case No. 23CR16084.

### I.  FACTS

Our task in reviewing the denial of an MJOA is to examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). We state the facts accordingly.

One morning, a homeowner found defendant and a woman inside the detached garage on his property. It appeared that they had spent the night in the garage, which contained a mattress, couch, and recliners. The owner denied having given them permission to be there, scared them off with a gun, and called the police. Upon arrival, the police found a handwritten note on the garage floor, in which defendant identified himself as a former tenant (which the homeowner later confirmed was true), explained that he had gotten a divorce and was looking for a place to live, asked to rent from the homeowner again, and signed with his name and phone number. The police found defendant standing on the porch of a house down the street. While a police officer searched his pockets, defendant dropped a Costco credit card from his hand onto the ground in a surreptitious manner—something the officer noticed only later in reviewing his bodycam footage. The card bore the name of the homeowner's deceased wife.

Defendant was charged with second-degree burglary, ORS 164.215, for allegedly having unlawfully entered

or remained in the garage "with the intent to commit the crime of theft therein." He was charged with third-degree theft, ORS 164.043, for allegedly having committed "theft of property and/or credit card" worth less than $100.

The case proceeded to trial. At the close of the state's case, which was also the close of all evidence, defendant moved for a judgment of acquittal on both charges. Because they are interrelated in a way relevant on appeal, we discuss both MJOAs.

As to the burglary charge, defendant challenged the sufficiency of the evidence of intent, asserting that there was "zero evidence that he had any intent to commit Theft."[1] The state disagreed, pointing to defendant's attempt to surreptitiously dispose of the credit card, which it argued established the requisite intent. The court denied the MJOA, concluding that "the evidence, at best, is very thin in terms of intent" but was enough to go to the jury.

The parties then argued the theft MJOA. Defendant argued that the evidence was legally insufficient to prove that the credit card had any value, noting that it was not even clear that it was an active card, *i.e.*, not expired or closed due to the cardholder's death. (Neither the card nor any photograph of the card was admitted into evidence.) The state countered that any piece of plastic has some value as plastic material and that a credit card also has value based on the "common understanding of what a credit card is." The trial court granted the MJOA, concluding that the state had failed to produce evidence that the credit card was "property." At that point, the state made a new argument that the evidence allowed a reasonable inference that defendant also stole some "acid" from the garage. The court rejected that argument, based on there being "no evidence that [defendant] took anything other than a credit card," and it reaffirmed its MJOA ruling.[2]

_____

[1] Defendant also challenged the sufficiency of the evidence for another element of burglary, but he does not reprise that argument on appeal, so we do not discuss it.

[2] When asked whether he looked through his garage after the incident, the homeowner testified, "No. I looked for stuff. For example, I needed some acid to clear a line and I thought I left it in a certain place but I went to, but it wasn't there. So, so I figured, well, I must have misplaced it." That was the testimony on

Because the court granted the theft MJOA, only the burglary charge went to the jury. The parties' closing arguments focused on whether defendant had permission from the homeowner to be in the garage. The jury found defendant guilty of burglary.

## II.  ANALYSIS

As relevant here, a person commits second-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215. Burglary is essentially trespassing in a building with the intent to commit a crime. "Since the time of Blackstone, the defendant's intent to commit a crime in the building has been the characteristic distinguishing burglary from mere trespass. And, under current Oregon law, intent to commit a crime is required to commit any degree of burglary; it continues to be the primary element distinguishing burglary from criminal trespass." *State v. Chatelain*, 347 Or 278, 286, 220 P3d 41 (2009) (internal citation omitted). What crime the person intended to commit while trespassing in the building is a material element that must be specifically alleged in the charging instrument. *State v. Sanders*, 280 Or 685, 691, 572 P2d 1307 (1977). Here, defendant was alleged to have trespassed in the garage "with the intent to commit the crime of theft therein." The state specifically argued that he intended to commit third-degree theft, the other crime with which he was charged.

A person commits third-degree theft when, "with intent to deprive another of property or to appropriate property to the person * * *, the person * * * [t]akes, appropriates, obtains or withholds such property from an owner thereof," ORS 164.015, and the value of the property is less than $100, ORS 164.043. To qualify as "property," an item must have "*some* monetary value." *State v. Waterhouse*, 359 Or 351, 354, 373 P3d 131 (2016) (emphasis added). "[T]he concepts of 'property' and 'value' are inextricably linked in that the former does not appear to exist apart from some evidence of the latter, at least in matters involving offenses against property." *Id.* at 358; *see also id.* at 358-59 ("the

which the state relied for its acid argument. The trial court concluded that there was nothing in the record to connect defendant to the missing or misplaced acid.

notion that a stolen item must have some value in order to be considered property is rooted even deeper in this court's case law"). Because third-degree theft is the lowest degree of property theft, "the minimum valuation needed to establish that a stolen item falls within third-degree theft and the minimum valuation needed to simply establish that an item is, in fact, 'property,' are identical; both require only that the item possess some value * * *." *Id*. at 359.

Defendant contends that the trial court erred in denying his MJOA on the burglary charge, because the evidence was legally insufficient to establish the intent element. He argues that evidence that he intended to take an item with no proven value does not prove burglary. The state counters that burglary requires only intent to commit a crime, not actual commission of a crime, and that it is reasonable to infer on this record that defendant intended to take an item of value, even if he failed to do so.

A.   *Scope of the Issue on Appeal*

To begin our analysis, we first clarify what is and is not at issue on appeal, because the scope of the issue presented in this case is actually quite narrow. At least four things *not* at issue are worth noting.

First, the trial court concluded that the circumstantial evidence was sufficient to prove that defendant intended to take the credit card from the garage and appropriate it to himself (versus taking it by accident), and defendant no longer disputes that point. It is thus undisputed on appeal that, viewing the facts in the light most favorable to the state, defendant intended to take the credit card from the garage.

Second, except for its unsuccessful "acid" argument to the trial court, *see* ___ Or App at ___ (slip op at 3 & n 2), the state has never argued that the evidence was sufficient to prove an intent to take anything other than the credit card. It is undisputed on appeal that the only intent at issue is defendant's intent to take the credit card.

Third, defendant has never argued that, if the evidence was sufficient to prove that he intentionally took the credit card, it was nonetheless insufficient to prove that he

formed that intent while trespassing in the garage. There is no dispute on appeal as to the timing of when defendant formed his intent to take the credit card.

Fourth, the specific crime that a person intended to commit while trespassing is a material element of burglary, *Sanders*, 280 Or at 691, and, here, the state pleaded and therefore had to prove that defendant intended to commit the crime of theft, that is, property theft.[3] The state has never argued that defendant could be found guilty of burglary if the state proved that he trespassed with the intent to commit *identity theft*, which is a different crime that involves the theft of information, rather than "property." *See* ORS 165.800(1) ("A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."); ORS 165.800(4)(b)(H) (defining "personal identification" to include a written document or electronic data that provides information concerning a person's credit card account number). Had the indictment alleged that defendant entered or remained with the intent to commit identity theft, rather than property theft, this would be a different case, and nothing in this opinion should be read to comment on the sufficiency of the evidence to establish an intent to commit identity theft.

Having clarified what is not at issue, we now state what is at issue. The only issue presented is whether the evidence at trial was sufficient to prove that defendant trespassed with the intent to commit *property theft*, where, viewed in the light most favorable to the state, it showed that defendant trespassed with the intent to take a credit card that he might have believed was for an active account. We turn to that question.

B.  *Sufficiency of the Evidence*

The parties agree that, to prove the intent element of burglary, what the state had to prove in this case was that defendant subjectively intended to take "property"—*i.e.*, an

---

[3] For clarity, we will use "property theft" to refer to forms of theft that require the theft of property, such as third-degree theft, ORS 164.043.

item with some monetary value—when he took the credit card from the garage. We agree with that premise. In doing so, we note that this is not a case in which the state is claiming that defendant intended to do something other than what he actually did, so this case does not implicate the principle that "completion of the intended crime is not required." *State v. Werner*, 281 Or App 154, 163, 383 P3d 875 (2016), *rev den*, 361 Or 312 (2017). Also, this is not a case in which there is any evidence that defendant made a mistake of fact or law, so we need not consider the effect, if any, of a defendant's mistake of fact or law on whether they had the requisite intent to commit a specific crime.[4] For present purposes, the only question is whether the evidence was sufficient to prove that, when defendant took the credit card from the garage, he subjectively believed it to have some monetary value.

The state argues that the circumstantial evidence allows a reasonable inference that defendant had that subjective belief. Specifically, it argues that "a factfinder could infer that defendant *** believed that the credit card had some value—whether it be using that credit card to purchase goods or services, the 'street' value of selling the credit card to someone else for that purpose, or some other intrinsic value in the card itself." Defendant disagrees that a factfinder could find the requisite intent without resorting to impermissible speculation.

There is no question that the state "may rely on reasonable inferences arising from circumstantial evidence to establish elements of a criminal offense." *State v. Hedgpeth*, 365 Or 724, 733, 452 P3d 948 (2019). A critical difference exists, however, "between inferences that may be drawn from circumstantial evidence and mere speculation." *State v. Vaughn*, 175 Or App 192, 201, 28 P3d 636 (2001). "Reasonable inferences are permissible; speculation and guesswork are not." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). "Ultimately, whether circumstantial evidence is sufficient to support a given inference is a question

---

[4] An example of a mistake of fact would be if a person broke into a building to steal a stack of cash seen through the window, only to discover that it was toy money. An example of a mistake of law would be if a person broke into a building to retrieve their own property that had been lent and never returned, erroneously believing that taking their own property back would legally qualify as theft.

of law." *State v. Simmons*, 321 Or App 478, 483, 516 P3d 1203 (2022), *rev den*, 370 Or 740 (2023).

The line between reasonable inferences and impermissible speculation is admittedly "sometimes faint" and "sometimes difficult to articulate with precision," but it is ultimately one "drawn by the laws of logic," rather than "by judicial idiosyncrasies." *Bivins*, 191 Or App at 467 (internal quotation marks omitted). A reasonable logical probability that follows from a stated narrative or historical fact is a reasonable inference. *Id*. Conversely, an inference is impermissibly speculative if "it requires too great an inferential leap—that is, when the logic is too strained"—or if "it requires the stacking of inferences to the point of speculation." *Id*. at 468 (internal quotation marks omitted). Also, when evidence allows more than one reasonable inference, it is usually for the factfinder to choose among them, *unless* the potential inferences "are in equipoise and there are no other facts which would aid the jury in deciding whether to draw one inference or the other." *State v. Hall*, 269 Or 63, 70, 523 P2d 556 (1974). In the latter circumstance, it would require impermissible speculation to choose which inference to make, so it is "necessary to say as a matter of law that the state has not met its burden of proof." *Id*. at 70-71.

In this case, we are unpersuaded that the evidence allows a reasonable inference that defendant believed the credit card to have *monetary* value when he took it.

As previously noted, the state argues that it is reasonable to infer that defendant believed "that the credit card had some value—whether it be using that credit card to purchase goods or services, the 'street' value of selling the credit card to someone else for that purpose, or some other intrinsic value in the card itself." That inference purportedly arises from the very fact that defendant took the card. Basically, in the state's view, if defendant did not believe that the credit card had monetary value, then he would not take it; ergo, it is reasonable to infer that he believed it had monetary value.

The problem with the state's argument is that it assumes that monetary value is the only type of value that

exists and that, because it is reasonable to infer that defendant viewed the credit card as having *some* kind of value (or else why take it), it is necessarily reasonable to infer that he believed it to have monetary value. We find that reasoning unpersuasive, at least on this record and given the current state of the law.

As previously mentioned, to qualify as "property" for purposes of the property theft statutes, the stolen item must have "*some* monetary value." *Waterhouse*, 359 Or at 356 (emphasis in original). An item's monetary value is normally either its market value or its replacement value. ORS 164.115(1) (generally defining "value" to mean "the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime"); *but see also* ORS 164.115(2) - (5) (special provisions for the valuation of certain written instruments; gambling chips, tokens, imitation currency, and similar devices; and property without reasonably ascertainable value).

A credit card made of valuable material—imagine a credit card marketed to millionaires that is made of precious metals—or that cost money to replace would therefore qualify as "property." Here, however, there was no evidence of any cost to replace the credit card (nor was there reason to replace it when the cardholder was deceased). As for market value, the state refers to the "intrinsic value in the card itself," which appears to mean the value of the plastic material from which the card is made. Like the trial court when it ruled on the theft MJOA, we are unpersuaded that a basic plastic credit card has monetary value for its material. *See State ex rel Juv. Dept. v. Dedford*, 177 Or App 555, 575-76, 34 P3d 673 (2001) (holding that the state failed to prove that newspapers placed in a common area of an apartment building were "property," where they were a free publication, and leftover newspapers were eventually taken to a recycling facility that paid one penny per pound, but there was no evidence of a market for the small quantity affected by the offense). The state suggests alternatively for the first time on appeal that defendant might have believed the card to have "street value" on the black market. Even assuming

that a black market exists for stolen physical credit cards, and even assuming that black-market value could be used to establish the monetary value of an item for property theft purposes, nothing in this record would allow a reasonable inference that defendant personally perceived this credit card as something that could be sold on the black market for money.

That leaves the state's argument that it is reasonable to infer that defendant believed the credit card to have "value" as something that could be used to purchase goods and services. It might be reasonable to infer that defendant perceived the card to have that type of "value"—but it does not necessarily follow that defendant perceived the card to have *monetary* value, which is the type of value required for property theft. Like a stolen key that potentially provides access to another person's house or vehicle, a stolen credit card potentially provides access to another's person's credit line.[5] But does that mean that the credit card itself has *monetary* value, such that the card qualifies as "property" for property theft purposes? Or is that a different kind of value, such as the informational value recognized by the identity theft statutes? Or is it both?[6]

There does not appear to be any controlling authority on whether a credit card has "monetary value" and thus qualifies as "property" for purposes of Oregon's property theft statutes, and we need not decide that issue in this case. The point is that the state's argument rests on an unsound foundation, which in turn undermines its reasonable-inference argument. If the law were clear that a basic plastic credit card qualifies as "property" for property theft purposes, then

_____

[5] It bears emphasis that this case has to do only with the taking of the credit card, not any unauthorized use of the credit card. Use would give rise to a separate crime. *See* ORS 165.055 (a person commits the crime of fraudulent use of a credit card "if, with intent to injure or defraud, the person uses a credit card for the purpose of obtaining property or services with knowledge that" the card is stolen, forged, revoked, or canceled, or that the use is unauthorized for any reason).

[6] Consider a piece of scrap paper containing a shopping list, then consider a piece of scrap paper on which someone has written their credit card information. Stealing the second paper constitutes identity theft, whereas stealing the first paper does not. ORS 165.800(1); ORS 165.800(4)(b)(H). But does stealing the second paper also qualify as property theft, even though the paper itself has no value?

it might be reasonable to infer from someone's taking of a credit card that they believed it to have monetary value, on the theory that people are presumed to know the law. Or, if some case-specific evidence showed that defendant personally understood the credit card to have monetary value, that would be direct evidence of the necessary intent, subject only to our earlier caveat about the potential relevance of a defendant's mistake of law or fact in deciding whether they had the requisite intent to commit a specific crime.

Here, there is no settled law, nor is there any case-specific evidence that defendant believed the credit card to have monetary value, versus another kind of value. At best for the state, the fact that defendant took the credit card allows two competing reasonable inferences—one being that defendant believed the credit card to have monetary value, and the other being that he believed it to have a different kind of value based on the information that it contained or the access that it could potentially provide—and those two possibilities are "in equipoise," without there being any other facts to which the jury could look to determine which subjective belief defendant had. *Hall*, 269 Or at 70. On this record, the evidence was therefore insufficient to prove that defendant had the requisite intent for burglary when he entered or remained in the garage.

The trial court therefore erred in denying defendant's MJOA on the burglary charge in Case No. 23CR26379. The parties agree that the correct disposition under these circumstances is to reverse the burglary conviction and remand with instructions to enter a conviction for the lesser included offense of second-degree criminal trespass. *See* ORS 164.245(1) ("A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully * * * in or upon premises."); *State v. Modrzejewski*, 311 Or App 739, 743, 490 P3d 172 (2021) ("Under Article VII (Amended), section 3, of the Oregon Constitution, we may, if we can determine what judgment should have been entered, remand with instructions to enter a judgment for a different conviction.").

The parties also agree that, under these circumstances, the correct disposition in Case No. 23CR16084 is

to vacate the judgment revoking probation and remand for reconsideration of that decision in light of the changed circumstances. *See State v. McMilian*, 191 Or App 62, 69, 80 P3d 538 (2003), *rev den*, 337 Or 248 (2004) (where, in revoking probation, the trial court relied on a conviction that has since been reversed, the proper course was to reverse and remand the probation-revocation judgment for reconsideration in light of the changed circumstances, if the court could still revoke probation on other grounds).[7]

In Case No. 23CR26379, judgment of conviction for burglary reversed; remanded for entry of judgment of conviction for second-degree criminal trespass as a lesser included offense and for resentencing. In Case No. 23CR16084, vacated and remanded.

---

[7] Although *McMilian* used the tag line "reversed and remanded," 191 Or App at 69, we use "vacated and remanded" to signify our recognition that, after reconsidering the issue, the trial court could reinstate the same judgment in the probation-revocation case.