No. 423　　　　May 14, 2025　　　　441

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

SSTATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY STEPHEN LIMBO BLASQUEZ,
*Defendant-Appellant.*

Clackamas County Circuit Court
22CR00517; A179563

Todd L. Van Rysselberghe, Judge.

Argued and submitted July 25, 2024.

Carla E. Edmondson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

SHORR, P. J.

Remanded for resentencing; otherwise affirmed.

_____
　* O'Connor, Judge *vice* Mooney, Senior Judge.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of fourth-degree assault constituting domestic violence, ORS 163.160, and one count of harassment, ORS 166.065. He raises six assignments of error. His first two assignments challenge the trial court's denial of his motions for judgment of acquittal (MJOA) on both charges. In his third assignment, defendant argues that statements made by the victim were not admissible under the domestic violence exception to the hearsay rule, OEC 803(26). His remaining assignments of error challenge special conditions of probation. For the reasons explained below, we conclude that the trial court did not err in denying defendant's MJOAs or in admitting testimony under OEC 803(26). However, we conclude that the court erred in imposing special conditions of probation for the first time in the written judgment. Accordingly, we remand for resentencing and otherwise affirm.

Shortly after midnight on January 1, 2022, J called 9-1-1 and reported that she had been punched in the mouth. Defendant was subsequently charged with fourth-degree assault constituting domestic violence and harassment. The case proceeded to a jury trial. At trial, J recanted her statement that she had been punched, testifying instead that her injuries were caused by a fall. She testified that defendant was her boyfriend and that they had been out drinking at several bars on New Year's Eve. She said that after leaving the last bar, she started running, although she could not recall why. While running, she slipped on a patch of black ice, falling onto her knees and face. She testified that her hands were in her pockets at the time, which was why there were no injuries to her hands. She said they continued to her house where they began "arguing and screaming at each other," but she could not recall what ignited the fight. She then called 9-1-1 while "[s]uper-drunk" and "super-mad." She could not recall why she called 9-1-1, but said she thought it was because she wanted defendant to leave her apartment.

The state played the 9-1-1 call at trial. At the beginning of the call, J can be heard screaming, "Don't fucking touch me." As J speaks to the dispatcher, defendant can

be heard in the background shouting, "All I did was try to help you. *** Fuck you. I was helping you." When asked whether it was a physical or verbal fight, J told the dispatcher, "He has been threatening physical." The dispatcher asked if there had been any drinking or drugs that night. J responded, "Yes, and I have been punched in the mouth, so—." Defendant shouted, "I did not punch you! Are you fucking crazy? I did not punch you!" Later in the conversation, J told the dispatcher that defendant had left her apartment on foot.

Officer Lemons testified that he was dispatched to J's apartment in response to her 9-1-1 call, and arrived approximately 10 minutes after she made the call. He testified that J was crying and appeared to be intoxicated, but she was able to answer his questions and was cooperative. The prosecutor asked Lemons to describe what J said had happened to her. Defense counsel objected on hearsay grounds, and the prosecutor sought to admit the evidence under OEC 803(26) as a statement that narrates domestic violence to a police officer. Outside of the presence of the jury, the prosecutor made an offer of proof, arguing that there were sufficient indicia of reliability to admit the statements under OEC 803(26). The court agreed and overruled defendant's objection after considering the factors listed in OEC 803(26)(b) to assist the court in determining reliability. The court first stated that there was "no evidence" to support the personal knowledge factor. But then, with respect to J's intoxication, the court stated that it did not find that "her mental condition is enough to make *** what she had to say unreliable." The court found that corroborating evidence and the timing of the statements supported reliability. Although the officer's questions were made in a manner that "could be considered leading, *** he was leading with a statement that she had already made." Ultimately, the court concluded that the statements were admissible because they were captured in a reasonably reliable way.

After the court overruled the objection, Lemons described his interview with J. J told Lemons that while she and defendant had been drinking at a bar, they got into an argument over her talking to other people. The argument

continued when they got back to her apartment. She could not remember what happened to her mouth, even when prompted by Lemons. Lemons reminded J that she had told the dispatcher she had been punched. J responded, "No, did I tell them that?" She told Lemons, "I felt like I got punched." She also told the officer that she did not fall. When asked why she called 9-1-1, she said she called "because her boyfriend was going to harm her and she felt like he was going to hurt or choke her."

While Lemons was interviewing J, other officers spotted defendant a couple blocks from J's apartment. Officer Lynch testified that defendant initially attempted to flee when the officer first tried to stop and question him. Defendant was quickly detained, and he told officers that he ran because he was scared. Defendant told the officers that J had gotten upset while they were at a bar. As they were walking home, she began to run away from him when she slipped on a patch of ice and fell. They continued to her house, where she said she was going to call the police to get defendant in trouble. The officers noticed that he had blood on his hands and one of his knuckles was scratched up. Defendant said the blood on his hands was from helping J after she fell, and he had scrapes on his knuckles because he had become upset and punched a tree.

The state also admitted into evidence photos of J taken by the police when they responded to her call. The photos show that her lip was swollen and cut on the inside. There do not appear to be any other injuries to her face. A photo taken from under her chin did not show any discoloration or abrasions to her chin. J testified that there was a bruise on her chin that was hard to see in the photo due to the flash, and bruises on her knees that the police did not photograph. A couple days after the injury, J submitted photos to the DA's office showing bruising to her chin and knees. Additionally, about a week after the incident, one of the officers who had interviewed J stopped her vehicle during an unrelated traffic stop. He recognized her, and began talking to her about that night. J started crying and said that when she woke up the day after the incident, she remembered that

she had actually fallen at her house and hit her lip, and that defendant had not punched her.

At the close of the state's case, defendant moved for a judgment of acquittal on both charges. The court denied both MJOAs. Defendant then testified in his defense. His account was consistent with what he told the officer on the night of the incident. Defendant clarified that the reason J was screaming "don't touch me" during the 9-1-1 call was because he was trying to comfort her with a hug, and she did not want to be touched. The jury convicted defendant on both counts.

On appeal, defendant argues in his first and second assignments of error that the trial court erred in denying his MJOAs. He argues that the evidence was in equipoise as to whether J's injury was caused by him or by a fall. He contends that both inferences were equally reasonable, and therefore no rational trier of fact could find beyond a reasonable doubt that he committed the charged crimes.

We review the denial of an MJOA to determine whether, after viewing the facts and the inferences that can reasonably be drawn from them in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). In meeting that standard, "[r]easonable inferences are permissible; speculation and guesswork are not." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). A reasonable inference is one that can be drawn with logical probability from a stated fact. *State v. Stutte*, 339 Or App 87, 95, ___ P3d ___ (2025). "Conversely, an inference is impermissibly speculative if * * * the logic is too strained—or if it requires the stacking of inferences to the point of speculation." *Id.* (internal quotation marks omitted).

In this case, the state's theory was that defendant punched J. We agree with the state that the evidence permitted a reasonable inference that defendant punched J, which established an essential element of both charged crimes.

J told the 9-1-1 operator that she had been punched. Shortly after the incident, she told the police that she had

not fallen. The physical evidence—J's injured lip, the lack of visible injury to the rest of J's face, and defendant's scraped knuckles—corroborated those statements. Other evidence in the record suggests that J's injuries were caused by a fall, but that does not necessarily mean the evidence was in equipoise. We have explained that evidence may support multiple reasonable inferences, and if they do, which inference to draw is for the jury to decide. *Bivins*, 191 Or App at 467. On the 9-1-1 call, defendant can be heard denying that he punched J. When police interviewed J shortly after she made the 9-1-1 call, she claimed that she could not recall how she injured her lip. When police interviewed defendant, he said that J had fallen and then called 9-1-1 to get him in trouble. He said the scrapes on his knuckle were caused when he punched a tree. A week after the incident, J told an officer that she remembered she had fallen at her house, and that she had not been punched. At trial, J testified that her injuries were caused by a fall on the street, and not by defendant. A jury could infer from that evidence that J had indeed fallen. However, a jury could also reasonably infer that J changed her story to protect defendant, and defendant lied about the cause of injury out of self-interest.

We therefore reject defendant's argument that the evidence was in equipoise. Equipoise exists "there are no other facts which would aid the jury in deciding whether to draw one inference or the other." *State v. Hall*, 269 Or 63, 70, 523 P2d 556 (1974); *see also State v. Bilsborrow*, 230 Or App 413, 418, 215 P3d 914 (2009) (defining "equipoise" as facts "pointing with equal logical force *** to the state's version of events and defendant's"). Here, while the jury had to consider competing narratives and testimony, there was evidence from which the jury could reasonably infer that J had told the truth in her initial 9-1-1 call and statements to the police and had only changed her story later to protect her boyfriend, defendant.

To conclude as to the first and second assignments of error, the totality of the evidence, viewed in the light most favorable to the state, permitted a rational trier of fact to find beyond a reasonable doubt that defendant had punched J. The trial court did not err in denying defendant's MJOAs.

We turn now to defendant's third assignment of error. Defendant argues that the trial court erred in admitting J's out-of-court statements to Officer Lemons under the domestic violence hearsay exception, OEC 803(26), because her statements did not have sufficient indicia of reliability.

OEC 803(26) allows the admission of a victim's statements describing domestic violence if made "within 24 hours after the incident occurred" and if they were "made to a peace officer" and have "sufficient indicia of reliability." OEC 803(26)(a). In determining whether a statement has sufficient indicia of reliability, a court may consider the following factors:

"(A)   The personal knowledge of the declarant.

"(B)   Whether the statement is corroborated by evidence other than statements that are subject to admission only pursuant to this subsection.

"(C)   The timing of the statement.

"(D)   Whether the statement was elicited by leading questions.

"(E)   Subsequent statements made by the declarant. Recantation by a declarant is not sufficient reason for denying admission of a statement under this subsection in the absence of other factors indicating unreliability."

OEC 803(26)(b). The factors are not exclusive, and the overarching question is whether "the totality of the relevant circumstances furnish the victim's statements with sufficient indicia of reliability." *State v. Wilcox*, 180 Or App 557, 562, 43 P3d 1182, *rev den*, 334 Or 632 (2002). We review a challenge to the trial court's admission of evidence under an exception to the hearsay rule for legal error. *State v. Ragibov*, 272 Or App 22, 25, 353 P3d 1247 (2015).

First, we consider whether J's state of intoxication negated her personal knowledge of the incident. In this case, although J was noticeably intoxicated, the officers who interviewed her shortly after she called 9-1-1 testified that she was able to converse back and forth, answer questions, and was cooperative. The recording of her 9-1-1 call similarly demonstrates that J was able to comprehend and

respond to questions about what had happened. J had difficulty remembering portions of the evening, but was not so intoxicated as to be completely unresponsive or have no recall of events. Her statements—that she did not fall and felt like she had been punched—expressed her personal knowledge of the incident. Under the circumstances, this factor leans towards reliability. Second, the physical evidence in the record corroborates her statements. Based on the photographs of J taken shortly after the New Year's Eve altercation, there is a lack of visible injury to any other part of her face other than her lip. That evidence is consistent with her statement that the injury was not caused by a fall. *See State v. Busch*, 311 Or App 464, 471, 489 P3d 1084 (2021) (concluding that the physical evidence was consistent with the victim's description of events). Third, the officer arrived to interview J within 10 minutes of her 9-1-1 call. Those factors favor reliability.

On the other hand, two factors lean toward unreliability. First, the officer elicited J's statements by leading questions. Second, J recanted her statement that she did not fall.

As noted, we look at the totality of the circumstances in determining reliability. Here, although the officer used leading questions, he merely reminded J of statements she had recently made to the dispatcher, and did not pressure her to change her statements or suggest she was lying. Further, although J later asserted that she fell, recantation is "not sufficient reason for denying admission of a statement under this subsection in the absence of other factors indicating unreliability." OEC 803(26)(b)(E). Under the totality of the circumstances, we conclude that J's statements to the officer had sufficient indicia of reliability. Accordingly, the trial court did not err in admitting the statements under OEC 803(26).

We turn to defendant's remaining assignments of error. In his fourth assignment, he argues that the trial court plainly erred by imposing special conditions of probation in the judgment without first announcing them in open court. At sentencing the court stated that defendant would "be required to complete the substance abuse package, the

domestic violence package"—but did not specify the special conditions covered by those packages. We have previously held that imposing conditions of probation in a judgment that have not been announced in open court constitutes reversible error, and a defendant is not required to preserve his claim because the error appears for the first time in the judgment. *State v. Bates*, 315 Or App 402, 404, 500 P3d 746 (2021). We have further held that for a shorthand phrase to suffice as announcing a condition in open court, it must be apparent from the record (1) that "all parties had the same understanding of the meaning of the shorthand phrase" and (2) that the phrase "included the conditions that were eventually listed in the written judgment." *State v. Priester*, 325 Or App 574, 582-83, 530 P3d 118, *rev den*, 371 Or 332 (2023). The state concedes that the shorthand phrases did not suffice to announce the special conditions in the judgment. We agree, accept the state's concession, and remand for resentencing.

Because we remand for resentencing, we do not reach defendant's fifth and sixth assignments, which challenge two specific special conditions of probation. In similar cases, we have remanded for resentencing and declined to determine a defendant's challenge to the probation conditions on the merits. *State v. Keen*, 304 Or App 89, 90, 466 P3d 95 (2020); *State v. Anotta*, 302 Or App 176, 178, 460 P3d 543, *rev den*, 366 Or 552 (2020). On remand, defendant may raise his arguments for the trial court to address in the first instance.

Remanded for resentencing; otherwise affirmed.