Submitted July 29; conviction on Count 2 reversed, remanded for resentencing, otherwise affirmed August 31, 2022

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHAWN MICHAEL SIMMONS,
*Defendant-Appellant.*

### Washington County Circuit Court
C151548CR; A175188

516 P3d 1203

Defendant appeals his convictions for one count of identity theft, ORS 165.800 (Count 1), and one count of theft of services, ORS 164.125 (Count 2). Both convictions relate to defendant opening a Comcast account in his ex-wife's name. As to each count, defendant argues that the trial court erred in denying his motion for judgment of acquittal, because the evidence was legally insufficient to prove a necessary element of the crime. *Held*: The evidence was legally sufficient to prove the elements of identity theft, so the trial court did not err in denying defendant's motion as to that count. The court erred in denying the motion as to theft of services, however, because the evidence was legally insufficient to prove that defendant opened the account with the intent to avoid payment for the services, which is the required intent under ORS 164.125(1). On this record, such a finding would depend on speculation, rather than a reasonable inference.

Conviction on Count 2 reversed; remanded for resentencing; otherwise affirmed.

Janelle F. Wipper, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Conviction on Count 2 reversed; remanded for resentencing; otherwise affirmed.

**AOYAGI, J.**

Defendant was convicted of one count of identity theft, a Class C felony, ORS 165.800 (Count 1), and one count of theft of services valued at $100 or more and less than $1,000, a Class A misdemeanor, ORS 164.125(5)(b) (Count 2), in connection with his opening a Comcast account in his ex-wife's maiden name. On appeal, as to the identity-theft count, defendant contends that the trial court erred by denying his motion for judgment of acquittal. As to the theft-of-services count, defendant contends that the trial court erred by denying his motion for judgment of acquittal and, alternatively, by accepting the jury's nonunanimous guilty verdict. We conclude that the evidence was legally sufficient to prove the elements of identity theft, but that it was legally insufficient to prove the elements of theft of services. We therefore reverse defendant's conviction on Count 2, remand for resentencing, and otherwise affirm.[1]

## FACTS

We review a trial court's denial of a motion for a judgment of acquittal to determine whether, viewing the facts in the light most favorable to the state, a rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). We therefore describe the evidence in the light most favorable to the state. Although defendant moved at the close of the state's case, we "must consider all of the evidence and affirm the trial court if the record as a whole contains sufficient evidence to support a verdict against the defendant." *State v. Nix*, 7 Or App 383, 384-85, 491 P2d 635 (1971); *see also State v. Bilsborrow*, 230 Or App 413, 418-19, 215 P3d 914 (2009) (stating same principle).

Defendant and C married in 2010. They bought a house together on Heiser Street. C already had a Comcast

---

[1] Given the nonunanimous guilty verdict on Count 2, defendant would be entitled, at the least, to a new trial on Count 2 in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 1394, 1397, 206 L Ed 2d 583 (2020) (holding that, under the Sixth Amendment, a criminal defendant may be convicted of a serious offense only by unanimous verdict). However, because defendant's second assignment of error provides more complete relief, we address it first and do not reach the nonunanimous-verdict issue.

account in her maiden name, which she brought with her to the Heiser Street house. She added defendant as an authorized user on the account.

Defendant and C divorced in 2013. They sold the Heiser Street house in March 2013, and both moved out. C terminated Comcast services at the house, personally returned the Comcast equipment, and closed the account entirely because she did not need Comcast services where she was moving. The divorce became final in August 2013, and C had limited contact with defendant thereafter. Defendant has a history of prescription opioid addiction, went to a detox center for two weeks around the time of the divorce, and admits to relapsing after a car accident on December 27, 2013.[2]

In December 2013, defendant was living in an apartment on Teal Boulevard. He was employed until "right before Christmas," when he left his job at an engineering firm. On December 21, defendant opened a Comcast account to obtain services at his Teal Boulevard apartment, and he picked up the Comcast equipment. Unbeknownst to C, the account was opened in C's maiden name.

On March 1, 2014, defendant moved, and Comcast services were transferred from the Teal Boulevard apartment to his new residence on Midlake Lane.

On July 25, 2014, defendant was taken into custody on charges unrelated to this case. According to defendant, he had been paying the Comcast bill regularly until that point, except that one time he lost service due to a late payment and immediately called Comcast to make the payment.

On September 8, 2014, Comcast disconnected services to the Midlake Lane address. It is reasonable to infer that the termination was for nonpayment.

In December 2014, Comcast attempted to collect $798 from C, which was how C learned of the account. C eventually connected the account to defendant, when she obtained his Midlake Lane address from one of his family

---

[2] We mention defendant's addiction history because the state suggests that it has some significance to what reasonable inferences may be drawn.

members, and she made a police report. According to C, defendant is "very good with numbers," and he knew C's date of birth, social security number, and driver's license number.

Defendant was charged with identity theft and theft of services. The above historical facts were admitted into evidence at trial. Additionally, a Comcast security manager testified to the normal process for opening a Comcast account, with the caveat that she had no personal knowledge of how this particular account was opened. The security manager explained that a person can sign up for Comcast services online, over the phone, or at a retail location. All three options require providing one's name. If it has been more than 30 days since the person has had a Comcast account, the person must also provide their date of birth and social security number so that Comcast can run a credit check. It does not matter if the person is or was an authorized user on someone else's account, as that is not a substitute for providing the necessary information to open one's own account. The person would still have to provide their date of birth and social security number so that Comcast can run a credit check. It is not permitted to open a Comcast account "under somebody else's name or using someone else's credit." The "only way" that the security manager could conceive of a former authorized user being able to open an account in the former primary account holder's name "would be if the authorized user provided the personal information of the former primary account holder *** [s]uch as the social security [number], date of birth, and name."

As for paying on the account, the security manager testified that bills would have been addressed in C's name and mailed to the service address, *i.e.*, the Teal Boulevard address and then the Midlake Lane address. The state did not put on any direct evidence of the payment history on this particular account. The only direct evidence on that point was defendant's testimony that he paid regularly on the account until July 2014 when he was taken into custody, at which point (implicitly) he stopped paying. As indirect evidence, the security manager testified regarding Comcast's normal practices around billing and nonpayment. In the event of nonpayment, she believed that Comcast typically

would disconnect service within "two or three months." When asked whether Comcast would allow a person who had not paid on an account for "three or four months" to transfer service to a different address, the manager testified "probably not."

Defendant moved for judgment of acquittal on both counts. Defendant argued that the evidence was legally insufficient to prove his intent on either charge—the intent to deceive or defraud (identity theft), or the intent to avoid payment for Comcast services (theft of services)—because it required the jury to engage in speculation. The court denied the motion, pointing to the evidence that the account was opened in C's maiden name, that it was associated with defendant's two addresses, and that defendant had access to the specific personal information necessary to open the account.

The jury found defendant guilty on both counts, returning a 12-0 verdict on Count 1 and an 11-1 verdict on Count 2. Defendant appeals the resulting judgment of conviction.

## ANALYSIS

The question before us is whether the evidence, viewed in the light most favorable to the state, was sufficient to allow a rational factfinder to find the essential elements of each crime beyond a reasonable doubt. *Cervantes*, 319 Or at 125. In making that assessment, we must allow for "reasonable inferences," while also recognizing that a jury may not engage in "speculation and guesswork." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). The line between reasonable inference and impermissible speculation is not always clear, but it is one "drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts." *Id.* (internal quotation marks omitted). Conversely, if the conclusion that needs to be drawn from the evidence to prove a necessary element requires "too great an inferential leap," or "if it requires the stacking of inferences to the point of speculation," then the evidence

is insufficient. *Id.* at 468 (internal quotation marks omitted). Ultimately, whether circumstantial evidence is sufficient to support a given inference is a question of law. *Id.* at 467.

We begin with Count 1. "A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person." ORS 165.800(1). That statute encompasses both using someone else's identity for financial gain (intent to defraud) and using someone else's identity to obtain an unwarranted advantage (intent to deceive). *See State v. Medina*, 357 Or 254, 264, 355 P3d 108 (2015) (discussing the language and legislative intent of ORS 165.800, particularly the addition of the "intent to deceive" language in 2001).

Defendant argues that the evidence was legally insufficient to establish that he used C's identity to open a Comcast account in December 2013 (as opposed to the account somehow accidentally ending up in her name). The state disagrees, as do we. Given the totality of the state's evidence, including the Comcast security manager's testimony, a rational factfinder could find that defendant used C's name, date of birth, and social security number to open the account in December 2013, and that he did so with the intent to deceive Comcast. The evidence is circumstantial, and reasonable inferences must be made, but speculation is not required to so find. The trial court therefore did not err in denying defendant's motion for judgment of acquittal on Count 1.

We reach a different conclusion on Count 2. "A person commits the crime of theft of services if: (a) *With intent to avoid payment therefor*, the person obtains services that are available only for compensation, by force, threat, *deception* or other means *to avoid payment for the services*." ORS 164.125(1) (emphases added).

Defendant argues that, even if the evidence was sufficient to prove that he used deception to open the Comcast account, it was insufficient to prove that he did so with the intent to avoid payment for the services. The state counters that the evidence allowed a reasonable inference that

defendant opened the account in C's name to avoid payment. We agree with defendant that reaching that conclusion on this record would require going beyond reasonable inference into the realm of impermissible speculation.

There are a variety of reasons that a person might open a Comcast account in a recent ex-spouse's name. It could be to get services without paying for them (for however long that might last until they are shut off). It could be to avoid a credit check, if the person is unemployed or has poor credit or is otherwise concerned about being able to open an account in their own name. Or it could be for another reason. There must be *some* evidence to allow a reasonable inference that the defendant's intent was to avoid payment. Here, there is simply nothing in this record that permits a reasonable inference that, when defendant used deception in December 2013 to obtain Comcast services, he did so with the intent to avoid payment for those services.

The absence of evidence of a history of nonpayment on the account is particularly notable. Viewed in the light most favorable to the state, the record would allow a finding that defendant stopped paying on the account in July 2014, but it would not allow a finding of nonpayment prior to July 2014. Depending on what one views as most favorable to the state, either the record is silent on defendant's payment history prior to July 2014, allowing no findings, or it allows only one possible finding, which is that defendant had generally been paying on the account until July 2014, at least with enough regularity to obtain a service transfer in March 2014 and to keep services until September 2014.[3]

_____

   [3] At trial, the state appears to have taken the position that, absent definitive proof of payment, the jury could assume nonpayment. The prosecutor argued in closing:

   "How much he paid is really—the only person that really knows that—the truth of that—is [defendant]. He told you his story on the stand yesterday that he paid the bill every month. That's not true. We have no proof of that at all. All we have is the word of this man coming in here and trying to essentially sell you a bill of goods on that point."

The state does not reprise that argument on appeal, which is prudent, given that it seems to misplace the state's burden of proof onto defendant. If the jury disbelieved defendant's testimony regarding his payment history, then there was simply *no* evidence on the issue. The jury could not rely on *no evidence* to find that defendant had a long history of nonpayment, as circumstantial evidence of defendant's intent in December 2013.

We note that nothing can reasonably be inferred (and the state does not argue that anything can be inferred) from the amount that Comcast sought to collect in December 2014— $798—because there is no evidence of the monthly cost of services provided to defendant's residences, nor is there any evidence as to whether the $798 included late fees or the like.

The fact that defendant stopped paying in July 2014 does not allow a reasonable inference that, when defendant used deception to obtain the services in December 2013, he did so with the intent to avoid payment. On this record, it would require impermissible speculation to find that defendant obtained Comcast services by deception "to avoid payment for the services." ORS 164.125(1)(a). The trial court therefore erred in denying defendant's motion for judgment of acquittal on Count 2, and we reverse the conviction on Count 2.

Conviction on Count 2 reversed; remanded for resentencing; otherwise affirmed.