No. 811 November 14, 2024 161

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN LESTER BISHOP,
*Defendant-Appellant.*

Clackamas County Circuit Court
21CR61095; A180148

Ulanda L. Watkins, Judge.

Argued and submitted August 28, 2024.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kate E. Morrow, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction following a bench trial for one count of third-degree theft, ORS 164.043. Defendant raises two assignments of error. First, defendant assigns error to the trial court's denial of his motion for judgment of acquittal (MJOA). Second, defendant argues that the trial court erred by failing to offer him the opportunity for allocution before imposing sentence. We conclude that the trial court did not err, and therefore affirm the judgment of conviction.

We state the facts and all reasonable inferences that may be drawn from those facts in the light most favorable to the state. *State v. Walker*, 356 Or 4, 6, 333 P3d 316 (2014). "[W]e do not differentiate between evidence based on the timing of its admission, because, on review of the denial of an MJOA, we must consider all of the trial evidence, regardless of when the motion was made." *State v. Cox*, 329 Or App 228, 229, 540 P3d 36 (2023).

On the evening of October 29, 2021, defendant and his girlfriend, Lee, went to dine at an all-you-can-eat buffet for the price of $19.99 per person, not including drinks. They had previously dined at the restaurant. On this occasion, they ordered sake for $3.50 and filled their plates at the buffet. Lee testified that she took shrimp from the buffet, but because defendant does not like seafood, he took and ate other food from the buffet. Approximately half an hour after they had been seated, they started yelling that there was shit in the shrimp. The restaurant owner explained to them that the buffet served both whole and peeled shrimp for guests to select from according to their preferences. He told them that besides shrimp, they could choose from the many other items available at the buffet. The couple then sat down and ate for another 15-20 minutes. They had three or four plates on their table. The couple then came up to the front and began yelling, using profanity, and degrading the restaurant in front of other customers. Defendant shouted, "You guys, Asians, don't know how to make this shrimp. * * * You don't serve shit to customer." They offered to pay for the sake, but the owner insisted that they pay in full for their

meals. They said they did not want to pay for the bill and walked out of the restaurant without paying.

Defendant was charged by information with one count of third-degree theft, ORS 164.043. He opted for a bench trial, and at the close of the state's case, moved for judgment of acquittal on the ground that the state had not met its burden of proving theft. The court denied the motion and ultimately found defendant guilty of third-degree theft. At sentencing, defense counsel argued that the state's requested jail time was excessive, and offered mitigating factors such as defendant's sobriety and his involvement with prison reintegration initiatives. Defense counsel concluded his statements by saying, "I think 24 hours community service and some time to complete that is a far more appropriate outcome than the 15 days that the State recommended from the outset of this matter. I submit it with that." The court then proceeded with sentencing, noting defendant's "appalling" conduct both on the day of the incident and throughout the trial. As the court was announcing the sentence, defense counsel interrupted to ask the court to stay the imposition of the sentence for defendant to look into appellate options. The court denied the request, and continued to read defendant's sentence. Defendant was sentenced to 12 months bench probation, 15 days in jail, $43.48 in restitution, and $429 in attorney fees.

After the trial court finished reading the sentence, defendant asked to speak. Defendant apologized for any disrespect, and said, "[Y]ou did make me realize, if I had that situation again, I would definitely handle it a different way." Defendant reiterated his sobriety and that he has "got [his] life together." He told the court, "I don't feel like I should be doing jail time 'cause *** I'm out there busting my—my tail end working." The court commended defendant for his efforts towards reformation but did not amend the sentence. The court reiterated that defendant would be doing jail time because of his "horrific" conduct.

In his first assignment of error, defendant contends that the trial court erred in denying his MJOA because the evidence was insufficient to prove that he committed the crime of theft. In support of that assignment, defendant advances

two arguments. He claims first that the record does not show that he had the requisite intent to commit theft and second, that the state's theory of the case supported, at best, theft of services and not third-degree theft. We review the denial of an MJOA by "examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

A person commits theft when, "with intent to deprive another of property or to appropriate property to the person or to a third person, the person takes, appropriates, obtains or withholds such property from an owner thereof." ORS 164.015(1). Theft constitutes third-degree theft when the amount of property taken is less than $100. ORS 164.043. "Property" means "any article, substance or thing of value, including *** tangible and intangible personal property." ORS 164.005(5).

Defendant argues that the state failed to prove that he took food with the requisite intent to steal it. Under ORS 164.015, a theft requires both a physical taking and the intent to deprive. Both the state and the defendant agree that a taking occurred when defendant put the food on his plate at the buffet. The state argues that defendant had the intent to steal upon plating the food, or at minimum, when he left the restaurant without paying. Defendant maintains that he never had the intent to steal, but rather merely refused to pay for unsanitary food. Moreover, defendant contends that the state's evidence does not support a reasonable inference that he possessed the requisite intent to deprive. He cites *State v. Simmons*, 321 Or App 478, 516 P3d 1203 (2022), *rev den*, 370 Or 740 (2023) in support of his argument that his continued eating or later failure to pay does not support a reasonable inference that he had the intent to deprive upon plating the food. *See id.* at 485 (concluding that the defendant's later failure to pay did not support an inference that he had the requisite intent to avoid payment at the outset). But in *Simmons*, the defendant started making payments on a fraudulently created Comcast account,

and only ceased payment when he was taken into custody on an unrelated matter. *Id.* at 480. Because the defendant had made some payments, the evidence did not support a reasonable inference that he had the initial intent to avoid payment. *Id.* at 484.[1] *Simmons* does not apply to this case, where defendant took food and did not make any payment.

Here, defendant does not like seafood and never took any shrimp from the buffet. He continued to eat after complaining aggressively about the shrimp. He made loud, disparaging statements and racist comments in front of the other guests, and ultimately walked out without paying. We conclude that the evidence, viewed in the light most favorable to the state, permits a reasonable inference that defendant had the requisite intent to deprive the restaurant of food without payment. A reasonable factfinder could infer from the evidence that defendant never had the intent to pay for the food. A factfinder might also infer from the evidence that defendant refused to pay based on a dispute with the manager over the quality of the food that was served and had initially intended to pay. But a factfinder is not obligated to accept as true a defendant's "alternative, less incriminating, version of what happened." *Cunningham*, 320 Or at 63-64. As noted, we must draw reasonable inferences in the light most favorable to the state in determining whether the trial court erred in denying defendant's MJOA. *Walker*, 356 Or at 6.

As to defendant's theft of services argument, he concedes that he did not specifically argue at trial that he could not be convicted of theft because he took a service rather than property. We do not resolve the issues of preservation or whether defendant could have been charged with theft of services, because we conclude that, regardless, defendant could be properly charged with theft of property. Food served at a restaurant is tangible personal property that has monetary value, thus meeting the definition of "property" under ORS 164.005(5), which, as noted, includes "a substance or thing of value" and "tangible property." The trial court did not err in denying defendant's MJOA.

---

[1] *Simmons* involved ORS 164.125(1)(a), which criminalizes theft of services. That statute defines such theft as taking services "with intent to avoid payment therefor."

In his second assignment of error, defendant contends that the trial court erroneously denied him the right to be heard from personally and directly without counsel at sentencing. Article I, section 11, of the Oregon Constitution provides a criminal defendant the right "to be heard by himself and counsel." That right of allocution includes the defendant's right to personally make a case for sentencing mitigation before the imposition of sentence. *State v. Ross*, 331 Or App 570, 571, 546 P3d 960 (2024).

Defendant claims that he "did all that should be expected to preserve the error," and in the event we disagree, he argues that preservation be excused or that this court exercise its discretion to review for plain error. Having reviewed the record, we conclude that defendant's argument is unpreserved. Defense counsel argued for mitigation before sentencing and interrupted the court mid-sentencing, but never indicated that defendant wished to be heard. Because defendant had the opportunity to ask to speak and failed to exercise his right, there is no reason to excuse preservation. Moreover, any error is not plain. Where the defendant does not indicate on the record that he wishes to speak, we have concluded that there "is no error that we may review." *State v. Fern*, 110 Or App 185, 187, 822 P2d 1210 (1991). "Because defendant did not in any way indicate to the court that he wished to speak" before or during sentencing, "nor does he now argue that the right cannot be exercised by counsel, the court did not deny him the right of allocution." *State v. Juarez-Hernandez*, 333 Or App 794, 796, 553 P3d 1068 (2024); *see also Ross*, 331 Or App at 573 (explaining that the court did not deny the defendant's right of allocution because he did not indicate that he wished to speak until after he was sentenced). Accordingly, the trial court did not err, plainly or otherwise.

Affirmed.