306 April 8, 2026 No. 283

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL JAMES CAMPBELL,
*Defendant-Appellant.*

Multnomah County Circuit Court
23CR23228; A182888

Steffan Alexander, Judge.

Submitted February 4, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie Hortsch, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

### AOYAGI, P. J.

Defendant appeals a judgment of conviction for first-degree robbery and menacing. He argues that the trial court erred in denying his motion for a judgment of acquittal (MJOA) on the first-degree robbery charge, because the evidence was legally insufficient to prove the theft element of the offense.[1] Defendant emphasizes the lack of direct evidence of theft and the state's reliance on circumstantial evidence and inferences. We conclude that the court did not err in denying the MJOA and, accordingly, affirm.

### STANDARD OF REVIEW

On review of the denial of an MJOA, our task is to examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). We "resolve all conflicts of evidence in favor of the state and give the state the benefit of all reasonable inferences." *State v. Rader*, 348 Or 81, 91, 228 P3d 552 (2010). To the extent inferences from circumstantial evidence are necessary to prove an element, it is a question of law what reasonable inferences may be made from the evidence. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Reasonable inferences are allowed, but "speculation and guesswork are not." *Id*. We state the facts in accordance with the standard of review, except that we add a brief description of some of defendant's trial testimony as helpful context for his argument on appeal.

### FACTS

On May 17, 2023, Munoz was working as an asset protection specialist at Fred Meyer. He became suspicious of defendant while watching him on surveillance video, even though he had not seen defendant take any merchandise. Munoz decided to make his presence known. As Munoz approached defendant, who was carrying two large

---

[1] Defendant's opening brief contains two assignments of error. The second assignment of error (regarding a conceded sentencing error) has been rendered moot by the trial court's issuance of an amended judgment, so we do not address it.

backpacks and a drawstring bag, defendant cinched the drawstring bag. Munoz had not seen defendant put anything in the bag but nonetheless asked him if there was anything in his bag that "he would like to take out." Defendant did not respond. Munoz then followed defendant through the store in an obvious way. As defendant walked toward the exit, defendant turned, pulled a knife with a three-inch blade from his pocket, and pointed it at Munoz's torso from three feet away, saying something to the effect of "Get back, or I'm going to fucking stab you." Munoz stepped back but continued following defendant at a safe distance. Defendant left the store without buying anything. Munoz called the police. At the time, Munoz was unsure whether defendant had stolen anything.

Police officers soon located defendant nearby. They found a knife in defendant's pocket. They found a package of Adidas socks, a package of Champion underwear, and packages of Hot Wheels in defendant's bags.

Munoz reviewed the store's video surveillance footage. He discovered footage of defendant inside the Fred Meyer store holding a package of underwear, a package of socks, and packages of Hot Wheels. He had not seen any of those items in defendant's hands when he approached defendant inside the store.

Defendant was charged with first-degree robbery (Count 1), second-degree robbery (Count 2), unlawful use of a weapon (Count 3), interfering with a peace, parole, or probation officer (Count 4), and menacing (Count 5). Counts 1, 2, and 3 were tried to a jury. Defendant waived jury on Counts 4 and 5, and those were tried to the court.

At trial, Munoz was shown photographs of the underwear, socks, and Hot Wheels found in defendant's bags. He identified all three as items sold at Fred Meyer, albeit in packaging that was not unique to Fred Meyer, and he identified a yellow sticker present on both the underwear package and the socks package as a Fred Meyer security tag. The tags are deactivated when scanned at a register and, unless deactivated, will trigger an alarm when the item is taken through the security pedestals at the exits.

Munoz did not remember the alarm going off when defendant left the store.

At the close of the state's case, as relevant here, defendant moved for a judgment of acquittal on the first-degree robbery count. He argued that there was no "actual evidence" that he stole anything, that the items found in his bags could have been purchased anywhere, and that the state was relying on an impermissible stacking of inferences to prove that he had been committing or attempting to commit theft. Defendant noted that there was no video footage of him putting anything in his bags and no evidence of the alarm going off as he exited the store. The court denied the motion, concluding that the evidence was legally sufficient for the charge to go to the jury.

Defendant testified on his own behalf. He denied stealing anything and testified that the alarm did not sound when he left the store. Regarding the surveillance video, defendant claimed to have returned those items to the shelf when he saw Munoz approaching. Regarding the items found in his bags, defendant claimed not to have stolen them, and he stated that he collected Hot Wheels.

At the close of all evidence, defendant renewed his MJOA, and the trial court denied the renewed MJOA.

The jury found defendant guilty of first-degree robbery and unlawful use of a weapon; it acquitted him of second-degree robbery. The remaining charges were tried to the court, which found defendant guilty of menacing and acquitted him of interference. After merger, the court entered convictions for first-degree robbery and menacing.

## ANALYSIS

As relevant here, a person commits first-degree robbery "if in the course of committing or attempting to commit theft *** the person uses or threatens the immediate use of physical force upon another person with the intent of *** [p]reventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[,]" ORS 164.395(1)(a), and the person "[u]ses or attempts to use a dangerous weapon," ORS 164.415(1)(b). Defendant

acknowledges that the trial evidence was sufficient to prove that he threatened Munoz with a knife (a dangerous weapon), but he argues that it was insufficient to prove that he was "committing or attempting to commit a theft" at the time. In defendant's view, there was no direct evidence of theft, and the circumstantial evidence was insufficient to prove the theft element beyond a reasonable doubt. The state disagrees. It contends that the evidence allowed a reasonable inference that defendant was in the process of committing or attempting to commit theft of the underwear, socks, and Hot Wheels when he threatened Munoz.

The parties' disagreement regarding the legal sufficiency of the evidence turns on the concept of reasonable inferences. It is well-established that the prosecution "may rely on reasonable inferences arising from circumstantial evidence to establish elements of a criminal offense." *State v. Hedgpeth*, 365 Or 724, 733, 452 P3d 948 (2019). At the same time, a criminal charge should not go to the jury if the state has not put forward sufficient evidence to allow the jury to reach a guilty verdict without engaging in speculation. "Reasonable inferences are permissible; speculation and guesswork are not." *Bivins*, 191 Or App at 467. "[W]hether circumstantial evidence is sufficient to support a given inference is a question of law." *State v. Simmons*, 321 Or App 478, 483, 516 P3d 1203 (2022), *rev den*, 370 Or 740 (2023).

"The line between reasonable inferences and impermissible speculation is admittedly sometimes faint and sometimes difficult to articulate with precision, but it is ultimately one drawn by the laws of logic, rather than by judicial idiosyncrasies." *State v. Stutte*, 339 Or App 87, 95, 568 P3d 247 (2025) (internal quotation marks omitted). A reasonable inference is a "reasonable logical probability that follows from a stated narrative or historical fact." *Id*. The question is only "whether the factfinder reasonably could infer that a particular fact flows from other proven facts, not whether the inference *necessarily* flows from the proven facts." *Hedgpeth*, 365 Or at 733 (emphasis in original). Also, the inference need not follow "the form of a logical syllogism," *id.* (internal quotation marks omitted), and factfinders "may rely on common experience or common knowledge in making reasonable

inferences," *State v. Clowdus*, 326 Or App 36, 39, 530 P3d 525 (2023).

A mere possibility, however, "is not enough to give rise to an inference," or at least not a reasonable inference on which a criminal conviction can rest. *State v. Olson*, 296 Or App 687, 692, 439 P3d 551 (2019). Courts have an "obligation to distinguish between inferences that can be reasonably drawn from the evidence and inferences that are mere speculation." *Hedgpeth*, 365 Or at 732. An inference is too speculative to be reasonable for purposes of proving a crime if "it requires too great an inferential leap—that is, when the logic is too strained"—or "if it requires the stacking of inferences to the point of speculation." *Bivins*, 191 Or App at 468 (internal quotation marks omitted); *see also id.* at 470 (holding that evidence was legally insufficient to prove that an assault was witnessed by a child, where the state argued for a reasonable inference from circumstantial evidence but the sought inference required "too much stacking of inferences and, ultimately, too great an inferential leap"). Relatedly, when circumstantial evidence supports two or more reasonable inferences that would lead to different results, it is generally for the factfinder to choose which inference to make, but that does not mean that the mere existence of multiple possibilities creates a proper jury question. *Hedgpeth*, 365 Or at 732. If one or more "'scenarios are possible,'" but "'they rely on speculation rather than reasonable inferences,'" then the evidence is legally insufficient to go to the factfinder. *Id.* (quoting *State v. Daniels*, 348 Or 513, 519, 234 P3d 976 (2010)). "[E]ven in the most difficult-to-try cases, speculation cannot be permitted to substitute for evidence, and the state's burden cannot be relaxed to the point where less evidence equates to more proof by giving the state the benefit of a broader range of imaginable possibilities." *Bivins*, 191 Or App at 470-71.

*Hedgpeth* is illustrative. The defendant in that case was charged with driving under the influence of intoxicants (DUII) on the theory that he drove with a blood alcohol concentration (BAC) in excess of .08 percent. *Hedgpeth*, 365 Or at 726. The evidence showed that the defendant was stopped by the police for a traffic violation, that he consumed no

alcohol after that point, and that his BAC was .09 percent approximately two hours after he was stopped. *Id.* at 728. The question was whether a factfinder could reasonably infer from that evidence that the defendant's BAC was .08 or higher when he drove. *Id.* at 726. The Supreme Court held that such an inference was too speculative to be reasonable for purposes of a DUII conviction. *Id.*

There were only two possibilities in *Hedgpeth*: either the defendant drove with a BAC at or above .08 percent, or he did not. *See id.* at 739 & n 11. Either was possible, and one was necessarily true, yet the Supreme Court held it improper to let the jury choose which one was true, because it would require speculation. The state had not presented any evidence as to how much alcohol the defendant had consumed, the timing of his consumption, or whether he exhibited any signs of intoxication during the stop. *Id.* at 743. Instead, the state put on evidence that his BAC was .09 percent at the time of testing and, from there, relied entirely on "common knowledge of the generic (and incomplete) proposition that alcohol dissipates from the blood over time" to argue for an inference that the defendant's BAC was .08 percent or higher approximately two hours earlier when he drove. *Id.* at 744. The Supreme Court explained that the gap between speculation and reasonable inference could not be bridged by "common knowledge of the body's reaction to alcohol" alone, *id.* at 733-34, as "the general proposition that blood alcohol concentrations fall over time is too general to permit any reasonable inference about defendant's blood alcohol concentration at the time that he drove[,]" *id.* at 739. Although expert testimony might not be necessary, some additional evidence was necessary to find the defendant guilty without engaging in speculation. *Id.* at 744.

This case stands in contrast to *Hedgpeth* and other cases holding that a defendant was entitled to a judgment of acquittal or other favorable ruling because the factfinder would not be able to find a necessary fact without resorting to speculation.[2] Here, although it was certainly *possible*

---

[2] In addition to *Hedgpeth*, *Bivins*, and other cases already discussed or cited, see, for example, *Daniels*, 348 Or at 519 (holding that MJOA should have been granted on drug possession charge where the state relied on circumstantial evidence to prove that the defendant was the source of methamphetamine found in

that defendant did not steal the underwear, socks, and Hot Wheels found in his bags—and the jury was free to find that the state failed to prove that he stole them, regardless of whether it was affirmatively convinced that he did not—it was nonetheless *reasonable* to infer from the circumstantial evidence admitted at trial that defendant did steal those items from the Fred Meyer store. The record includes video footage of defendant holding a package of underwear, a package of socks, and packages of Hot Wheels inside the store; testimony that defendant cinched his drawstring bag as Munoz approached and was not holding anything in his hands at that time; testimony that Munoz followed defendant for the remainder of his time in the store and did not see defendant pick up anything, set down anything, or pay for anything; evidence that an identical trio of items was found in defendant's bags shortly after he left the store; and testimony that all those items were sold at Fred Meyer and that two had distinctive Fred Meyer security stickers.

The state was not required to produce direct evidence of theft, such as an eyewitness to defendant putting the items in his bags and walking out the door with them. *See State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998) ("When analyzing the sufficiency of the evidence, we make no distinction between direct and circumstantial evidence as to the degree of proof required."). The state was permitted to rely

---

his girlfriend's bag, because the fact scenarios posited by the state were "possible" but relied "on speculation rather than reasonable inferences"); *State v. Hall*, 269 Or 63, 70-71, 523 P2d 556 (1974) (holding that evidence was legally insufficient to prove that the defendant possessed marijuana found in a certain room, where some circumstantial evidence allowed an inference that he possessed it, but other circumstantial evidence allowed an equally strong inference that he did not possess it, resulting in inferences "in equipoise," and there were "no other facts which would aid the jury in deciding whether to draw one inference or the other[,]" such that "the submission to the jury of the question of petitioner's possession would simply invite jury speculation"); *Stutte*, 339 Or App at 98 (applying *Hall*, 269 Or 63, and holding that an MJOA should have been granted, where the state relied on circumstantial evidence to prove an element of an offense, that evidence allowed for two possible inferences that were "in equipoise," and no other facts provided a basis for the jury to choose between the inferences without resorting to speculation); *State v. Macnab*, 222 Or App 332, 336-37, 194 P3d 164 (2008) (holding that evidence was legally insufficient to prove that the defendant lived in Benton County on a certain date, as relevant to venue, where the only possibilities were that he did or did not live in the county on that date, because the circumstantial evidence on which the state relied was "too speculative" and required "too great a leap" to allow a reasonable inference).

on circumstantial evidence, and, in this case, the circumstantial evidence gave rise to a reasonable inference that the items found in defendant's bags were the same items that he was videorecorded holding inside the store, which, coupled with the other evidence, allowed the jury to find that defendant was committing or attempting to commit theft when he threatened Munoz. The inference that they were the same items is reasonable because it is a "logical probability" that follows from the stated facts, *Bivins*, 191 Or App at 467 (internal quotation marks omitted), even if it does not *necessarily* follow from them, *Hedgpeth*, 365 Or at 733. It is always possible that a reasonably inferred fact may be untrue, just as express testimony may be untrue or circumstantial evidence may point in the wrong direction, but it is still evidence that is properly before the factfinder and must be considered in analyzing the legal sufficiency of the evidence—so long as it is a reasonable inference, not speculative, which is something that the court must decide as a matter of law. *Simmons*, 321 Or App at 483 ("[W]hether circumstantial evidence is sufficient to support a given inference is a question of law.").

Defendant argues that the state's case depended on the jury making too many inferences from circumstantial evidence. We disagree. Numerous pieces of circumstantial evidence contributed to the inference that the state wanted the jury to make, but we understand the jury to have been called upon to make a single inference, at least as relevant to the issue on appeal—that the items found in defendant's bags outside the store were the same ones that he was videorecorded holding inside the store. Once the jury made that inference, it could certainly find on this record that defendant did not pay for the items, such that he was necessarily committing or attempting to commit theft when he threatened Munoz.

We also reject defendant's argument that the existence of conflicting evidence, such as defendant's testimony to his own version of events, or evidence favorable to defendant such as the fact that Munoz did not remember the alarm sounding when defendant exited the store, means that the evidence was legally insufficient to go to the jury. Defendant contends that the "evidence of the underlying theft was

purely circumstantial, and the inferences of defendant's innocence, given that no one saw him take any items from the store, was sufficient to create reasonable doubt." But, as the state correctly points out, a factfinder is "not required to accept defendant's version of what had happened," and the MJOA standard requires viewing the evidence in the light most favorable to the state. *Cunningham*, 320 Or at 63-64. Viewed in the light most favorable to the state, the evidence was legally sufficient to prove the offense, even if some factfinders might not have been persuaded by it.

In sum, the trial court did not err in denying defendant's MJOA. The evidence was legally sufficient to prove the theft element of first-degree robbery, taking into account reasonable inferences from the circumstantial evidence.

Affirmed.