No. 363 May 6, 2026 253

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MIKAH JAMES KING,
*Defendant-Appellant.*

Washington County Circuit Court
23CR58792; A183638

Ricardo J. Menchaca, Judge.

Argued and submitted January 7, 2026.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Megan Mizuta, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

ORTEGA, P. J.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for identity theft, second-degree theft, possession of a burglary tool or theft device, and giving false information to a peace officer.[1] The charges all followed his arrest after leaving a Kohl's store with unpaid merchandise in his backpack. In his first two assignments of error, defendant challenges the trial court's denial of his motions for judgment of acquittal on identity theft and possession of a theft device. He argues as to identity theft that there was insufficient evidence to permit a finding that he possessed, with the intent to defraud or deceive, a Portland Rescue Mission identification card bearing someone else's name but displaying defendant's picture. As to possession of a theft device, he argues that there was insufficient evidence to find that he had altered an item to make it into a theft device. Defendant's third assignment of error challenges the trial court's denial of his motion to suppress evidence obtained incident to his arrest, arguing that the officers who arrested him lacked probable cause to arrest him. Defendant acknowledges that his fourth assignment of error concerning a term in the judgment is moot because the trial court has entered a corrected judgment.

We affirm on the first assignment because there is legally sufficient evidence that defendant possessed the identification card with intent to defraud. However, we reverse defendant's conviction for possession of a burglary tool or theft device on the second assignment, because there is insufficient evidence that defendant altered an item to create a theft device. We reject defendant's third assignment of error, because the officer had probable cause to arrest defendant based on information from a known source (the store's loss prevention officer) as well as the officer's own observations.

To address the motions for judgment of acquittal, we recite the pertinent facts based on evidence in the record viewed in the light most favorable to the state and reasonable inferences that may be drawn from it. *See State v. Simmons*, 321 Or App 478, 479, 516 P3d 1203 (2022), *rev den*, 370 Or 740 (2023) ("We review a trial court's denial of a motion for a judgment of acquittal to determine whether, viewing the

---

[1] Defendant was acquitted of an additional count of identity theft.

facts in the light most favorable to the state, a rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.").

A loss prevention supervisor working at a Kohl's store, Cowles, saw defendant enter the store wearing a large backpack. He began to monitor defendant via the store's security cameras. Defendant put eight pairs of Levi's jeans in different sizes into his shopping cart; Levi's jeans are a frequently stolen item, and to Cowles, the quantity "merit[ed] attention." In addition, defendant appeared to select the jeans and additional clothing without regard to price. Defendant also looked quickly through shoe boxes without regard to size before selecting a pair, which indicated to Cowles that he was looking for shoes without security tags. Cowles made note of what merchandise was in defendant's shopping cart.

At some point during the time that defendant was selecting merchandise, Cowles contacted a Beaverton Police Officer, Stubbs, with whom he had worked many times. Cowles sent Stubbs defendant's picture.

Anticipating that defendant would take merchandise into a fitting room, Cowles contacted an associate and told them to clean out the fitting rooms of all items such as clothing, tags, and hangers so that defendant would be entering an empty fitting room, making it clear what defendant left behind when he exited. Defendant entered a fitting room with some of the merchandise from his cart. The associate had limited the number of items he could take in, but after they walked away, defendant left the fitting room twice to take more merchandise from his cart into the fitting room.

Defendant left the fitting room with no visible merchandise, but Cowles, in communication with the associate, was quickly able to determine that merchandise was missing. Cowles reported that to Stubbs. Defendant, in the meantime, left the store without stopping to pay or to leave any merchandise behind. The alarms at the exits were not triggered by any security tags. Cowles and the associate determined exactly what was missing, and Cowles reported that additional information to Stubbs.

Stubbs saw defendant leave the Kohl's store around the time that Cowles reported that he was leaving. Stubbs recognized defendant from the picture Cowles had sent, and he noticed that defendant was carrying a big backpack. Stubbs arrested defendant as he was walking away from the store. After his arrest, defendant, who had an outstanding warrant, provided a false name. Stubbs searched defendant and found multiple identification, credit, and debit cards that did not match the name that defendant had given, as well as an identification card that matched that name. Stubbs also found clothing and shoes from Kohl's. Some of the merchandise had security tags that defendant had wrapped in foil, which had apparently prevented them from triggering the exit alarms. Stubbs also found a roll of foil tape in defendant's backpack.

The identity theft count on which defendant was convicted was based on a Portland Rescue Mission identification card in defendant's possession with a false name (the name he had provided to Stubbs) and defendant's picture.[2] Defendant also had various other forms of identification in the names of four other people, though no identification in his own name.

Defendant argues on appeal that the evidence was insufficient to establish identity theft, which requires proof that a person possessed, with the intent to defraud or deceive, "the personal identification of another person." ORS 165.800(1). "Personal identification" includes a written document that provides, or purports to provide, information about, among other things, a person's name. ORS 165.800 (4)(b)(A). Identity theft "encompasses both using someone else's identity for financial gain (intent to defraud) and using someone else's identity to obtain an unwarranted advantage (intent to deceive)."[3] *Simmons*, 321 Or App at 483. Defendant

---

[2] The record is unclear whether defendant had a card that had been issued to another person and defendant had altered the photo, or if defendant had provided false information to obtain the identification card with his own genuine photo and a false name.

[3] Defendant's argument focuses at times on the fact that defendant did not *use* the Portland Rescue Mission card, even when he had given police the name from the card. He argues, for example, that "to prove the requisite mental state, the state must show that a defendant's conscious objective was to possess the *identification* for the purpose of *using it* to deceive or to defraud." (Emphases

contends that there was insufficient evidence that he had the intent to defraud or deceive. He does not argue that the evidence was insufficient as to any other element.

We conclude that the trial court did not err when it denied defendant's motion for judgment of acquittal for identity theft. As we explained in *State v. Cotan*, 317 Or App 586, 589, 506 P3d 1184, *rev den*, 369 Or 856 (2022), whether there is sufficient evidence of the intent to defraud or deceive turns largely on the circumstances under which the defendant possessed the identification, such as "[p]ossession of more than one person's identification, more than one piece of identification from one person, and the types of identification possessed—a Social Security card with a legible number, a state-issued identification card, and a driver's license." Here, defendant possessed more than one person's identification, and more than one item from the same person, and he possessed, among other things, a driver's license and an electronic benefits card. The outstanding warrant on defendant allows an inference that he had a motive to use the identification of another to deceive and that he had altered or created the Portland Rescue Mission card with his photo for that purpose. Defendant did not possess any identification in his own name and, though he did not present the Portland Rescue Mission card to Stubbs, he offered Stubbs the name and birthdate listed on the card, which displayed his picture. Under those circumstances, a factfinder could infer that defendant did not want to be identified and intended, by altering or creating the card, to represent that he was the person named on it—that is, that he possessed

---

added.) But the crime of identity theft does not require proof of an intent to literally physically present, *e.g.*, the driver's license or credit card of another person. Rather, "the gravamen of the crime of 'identity theft' is the improper use by one person of 'another person's' identity," *State v. Zibulsky*, 266 Or App 633, 638-39, 338 P3d 750 (2014), not another person's "identification." That is, the statute is directed at possession of the identification of another person with the intent to use the *personal information* associated with the identification to defraud or deceive. "[I]t is apparent in the statute's text what type of act the legislature intended to prohibit: the act of passing [oneself] off as 'another person' through the use of a nonexclusive list of 'personal information.'" *Id.* The state was not required to prove that defendant intended to use the Portland Rescue Mission card itself. It is sufficient to show that he intended to use the personal information associated with it—such as giving the name on the card as his name, and providing that person's birthdate, when it would provide some advantage to be identified as that person rather than himself.

the Portland Rescue Mission card with the intent to defraud or deceive.

We turn to defendant's second assignment of error, which relates to his motion for judgment of acquittal on the possession of a theft device charge. As relevant here, ORS 164.235 (2025), *amended by* Or Laws 2025, ch 139, § 1, provides:

"(1)   A person commits the crime of possession of a burglary tool or theft device if the person possesses a burglary tool or theft device and the person:

"(a)   Intends to use the tool or device to commit or facilitate *** a theft by a physical taking[.]

"*****

"(2)   For purposes of this section, 'burglary tool or theft device' means an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or any other explosive, tool, instrument or other article adapted or designed for committing or facilitating a *** theft by a physical taking."

The state's theory was that defendant possessed a theft device because he had a roll of foil tape or tinfoil that he used to cover the security sensors on the merchandise he stole. ORS 164.235(2) has been construed to require that, if the defendant does not possess one of the named devices or some other device *designed* for facilitating theft, then the charge must be proved by evidence that the defendant possessed some other thing that was *adapted* for facilitating theft. Adaptation "is not a variation or a potential variation on an object's usual, legitimate use." *State v. Warner*, 298 Or 640, 650, 696 P2d 1052 (1985). Rather, there must be evidence that the item was changed in some way from its original state. For example, a metal signpost used to pry open a lock was not "adapted," because defendant "made no modification to it, such as flattening or sharpening one end, to alter it for prying." *Warner*, 298 Or at 650.

Defendant argues that the evidence was that he possessed foil tape, which he used to block the security tags

on the merchandise he stole so that they did not trigger the store's alarms. He contends that there was no evidence that he altered the foil tape, only that he used it in its original form. The state responds that there was some evidence that would allow a factfinder to conclude that defendant had taken foil and added adhesive to it. In other words, the state does not dispute that a roll of foil tape would not constitute a theft device; rather, it disputes only whether the evidence allowed the inference that defendant possessed foil that he had altered to make it sticky.

Two witnesses testified about the foil tape. Cowles testified that it had been used to cover up the security tags, and he explained that it prevented the tags from triggering the alarms at the exit. He described it as "foil tape" that he believed was used "in HVAC work." The prosecutor asked Cowles if it would be correct to describe it as an adhesive backing with foil on the exterior, and Cowles agreed. Stubbs testified that when he searched defendant's backpack, he found merchandise with security tags that had been covered with "some kind of heavy-duty tinfoil." He also testified that he found a roll of tinfoil in defendant's backpack. A photograph of items found in defendant's backpack, including the foil, was admitted as a trial exhibit, and shows a roll of silver foil similar in size to a roll of packing tape, with a layer of blue plastic backing.

In response to defendant's motion for judgment of acquittal on the theft device count, the prosecutor argued that tearing foil off a roll and wrapping it around the security tags was the "adaptation."

Having reviewed that evidence, we disagree with the state's argument that there was evidence from which a reasonable factfinder could conclude that defendant adapted foil by adding adhesive to it. There was no such evidence. There was evidence from which a reasonable factfinder could conclude that defendant possessed foil tape—that is, a roll of foil that comes with adhesive pre-applied to one side or, alternatively, that defendant possessed "tinfoil"—that is, a roll of "heavy duty foil" with no adhesive. There was no evidence that he possessed foil that he had altered by adding adhesive to it.

Consequently, the trial court erred by denying defendant's motion for judgment of acquittal on the theft-device charge. We therefore reverse the conviction on Count 3, possession of a burglary tool or theft device.

Finally, we address defendant's third assignment of error. He argues that the trial court erred by denying his motion to suppress evidence obtained after he was arrested. He contends that Stubbs lacked probable cause to arrest him at the time he exited the store, because there was not yet probable cause to believe that he had committed theft. We disagree. At the time that Stubbs arrested defendant, he had sufficient information from Cowles to supply probable cause that defendant had committed theft.

We review "a trial court's denial of a motion to suppress for legal error" and we are "bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." *State v. Brownlee*, 302 Or App 594, 596, 461 P3d 1015 (2020). Probable cause can be established by facts and reasonable inferences from an informant's reliable report. *State v. Sinkey*, 303 Or App 673, 676, 465 P3d 284 (2020).

We determine the reliability of an informant's report by considering three factors. *State v. Killion*, 229 Or App 347, 355, 211 P3d 367, *rev den*, 347 Or 349 (2009). The first factor is "whether the informant is exposed to possible criminal and civil prosecution if the report is false." If the informant provides their name to law enforcement, that factor is established. The second factor is whether the informant is providing information based on their own personal observations. The final consideration is whether the officer is able to corroborate the informant's information with the officer's own observations. The officer's observations may corroborate the informant's information by observation of the illegal activity itself, or "by finding the person, *** the location," and other circumstances "substantially as described by the informant." *Id*. Ultimately "whether the report is reliable rests on the particular circumstances in each case, because informant tips vary greatly in their value and reliability." *Id*. (internal quotation marks omitted).

Here, Stubbs's probable cause to arrest defendant was based on the information that Cowles supplied, and that information was sufficiently reliable. Cowles, who was a loss prevention supervisor, had a years' long working relationship with Stubbs. Cowles reported the information to Stubbs as it happened, based on his personal observations as he monitored defendant via security cameras. Before the arrest, Stubbs's own observations corroborated the information he had received from Cowles when he found the person in the photo that Cowles had sent him in the location Cowles had provided, carrying a large black backpack as Cowles had described and as appeared in the photo. At that time, Stubbs knew that defendant had entered the Kohl's store carrying a large black backpack. He had selected multiple frequently stolen items without apparent regard for size or price. He had taken some of the merchandise into a fitting room, then twice left the fitting room to bring more merchandise into the room. He had left the fitting room carrying no visible merchandise and without a shopping cart, and he did not stop to pay or leave behind any merchandise. Defendant had brought more merchandise into the fitting room than was left behind in the fitting room.

Those facts provided probable cause for Stubbs to arrest defendant as he left the Kohl's store. The trial court did not err by denying the motion to suppress.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.